**In re Claude L. MAINE, Debtor.**

**Bankruptcy No. 82–12403 M.**

United States Bankruptcy Court,
W.D. New York.

July 8, 1983.

Gerald B. Cohen, Buffalo, N.Y., for debtor.

Robert Abrams, Atty. Gen., Raul Figueroa, Asst. Atty. Gen., Buffalo, N.Y., for New York State Dept. of Labor, Unemployment Ins. Div.

BERYL E. McGUIRE, Bankruptcy Judge.

Claude L. Maine, the debtor, filed a petition for relief under the provisions of Chapter 13 on August 18, 1982. His schedules indicate that on the date of the filing, an amount of $500 was due to the New York State Department of Labor, Unemployment Insurance Division (the "State"). The debtor's Chapter 13 plan, as modified, proposed a 28% payment to unsecured creditors. No objections to confirmation were filed and, on December 6, 1982, the debtor's plan was confirmed.

On September 8, 1982, the office of the Attorney General of the State of New York, acting on behalf of the State, filed a proof of claim indicating that the sum of $750 was due from the debtor (claim # 12). The nature of the liability was described in the proof of claim as "unemployment insurance benefits received by debtor as a result of willful misrepresentations made" and, further, declared that the "debtor [was] ineligible for future benefits until [the] debt [was] paid in full."

On April 5, 1983, the debtor obtained an order directing the State to show cause why it should not be held in contempt of the provisions of the automatic stay under § 362, Title 11 U.S.C. and, additionally, why

it should not be required to reimburse the debtor for attorney's fees incurred in connection with the motion. The accompanying affidavit acknowledged the $750 debt to the State, but complained that the State was deducting from the debtor's current benefits to recover that debt.

The hearing on the motion was continued at the request of the State and held on May 6, 1983. The Court reserved decision, and letter briefs from the State and the debtor were submitted on May 19 and 20 respectively.

I

No evidence was taken at the hearing. The basic facts recited above and included in the debtor's motion papers, and the State's responding affidavit and proof of claim are not disputed.

II

The parties agree that, at the time of the debtor's filing, the State had a claim on which it might have instituted suit and recovered. See, N.Y. Labor Law § 594 (McKinney 1977). The State, therefore, is a "creditor" with a "claim" as those terms are defined by the Bankruptcy Act. See, 11 U.S.C. §§ 101(9), (4). That being the fact, it is clear that if this debtor successfully completes his Chapter 13 plan, the State's claim, at least partially, would be subject to the operation of discharge[1] irrespective of the alleged fraudulent character of the claim.[2]

The debtor argues, therefore, that the State's action in withholding future benefits is tantamount to an impermissible set-off in contravention of § 362, Title 11 U.S.C. The State, on the other hand, argues that under State statutory and case law, this debtor simply has no entitlement to future benefits until the fraudulent overpayment has been recovered.

1. See, 11 U.S.C. § 524, which would preclude independent suit on the claim.

2. Section 1328(a) of the Code, by its terms, operates to release even fraudulent claims.

## III

The parties have not cited, and this Court has not found, any cases directly on point. The Court is satisfied, however, that the State acted properly and did not violate the automatic stay in the exercise of its rights.

New York's Unemployment Insurance Law is contained in Art. 18 of its Labor Law. N.Y. Labor Law §§ 500–643 (McKinney 1977). The policy of the Article is declared in section 501 as follows:

Economic insecurity due to unemployment is a serious menace to the health, welfare, and morale of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden, which now so often falls with crushing force upon the unemployed worker and his family. After searching examination of the effects of widespread unemployment within the state, the joint legislative committee on unemployment appointed pursuant to a joint resolution adopted April ninth, nineteen hundred thirty-one, reported to the legislature that "the problem of unemployment can better be met by the so-called compulsory unemployment insurance plan than it is now handled by the barren actualities of poor relief assistance backed by compulsory contribution through taxation. Once the facts are apprehended this conclusion is precipitated with the certainty of a chemical reaction." Taking into account the report of its own committee, together with facts tending to support it which are matters of common knowledge, the legislature therefore declares that in its considered judgment the public good and the well-being of the wage earners of this state require the enactment of this measure for the compulsory setting aside of financial reserves for the benefit of persons unemployed through no fault of their own.

Title 7 of Art. 18 governs "Benefits and Claims". While there are no specific statutory provisions in Title 7 or the remainder of Art. 18 which permit recovery of past overpayments from future benefits, the Appellate Division of the Supreme Court, Third Department, in *Matter of Soto,* 35 A.D.2d 395, 317 N.Y.S.2d 70 (3rd Dept. 1970), has recognized that right as implicit. The Court there characterized the State's right as one of "setoff", concluding that "where parties have cross demands over against the other, the real indebtedness is the excess of one debt over the other". *Id.* at 397, 317 N.Y.S.2d 70. While the Court uses the term setoff, the issue there did not arise in a bankruptcy context and the quoted conclusion may be taken as suggesting yet another but related remedy, namely, recoupment. Before discussing the distinction between these remedies, further discussion is warranted.

The bankruptcy discharge itself is intended to provide the debtor with an opportunity for a fresh economic start in life[3] by preventing the collection, recovery or setoff of a dischargeable debt as a personal liability of the debtor or from the postpetition property of the debtor. *See,* 11 U.S.C. § 524. Here, it may be observed that the extent of the debtor's future entitlement under the unemployment insurance program is not a property right in the usual sense. In no significant way is that benefit the fruit of his labor or the result of his individual contributions. Here, there is the sense that, if the debtor can side-step the State's ability to recover from his future benefits, he obtains not just a fresh start, but a head start, at the expense of the financial integrity of the overall program.

The relationship between the State and its citizens under the Unemployment Insurance Law, of course, does not arise in a commercial context, but by legislative decree. Rights thereunder are not abrogated by the filing of bankruptcy, nor are those rights subject to assumption or rejection in the bankruptcy process. Yet the relationship has aspects which may be likened to a form of social insurance or, for that matter, to a societal contract.

---

3. *See, Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

There are a number of decisions which have addressed, in a bankruptcy context, public and private contracts flowing directly from public policy legislation. Cases involving overpayments of retirement benefits by governmental units[4] have avoided certain consequences of bankruptcy, but have found no debtor-creditor relationship to reach that result. That rationale is not available in this case inasmuch as the State clearly had a claim at the point of this debtor's filing. On the other hand, cases arising under the Medicare Act and involving provider contracts also have avoided bankruptcy consequences either by reference to concepts applied in bankruptcy to executory contracts,[5] or by viewing the government's recovery right as not involving the exercise of a setoff right, but instead, the government's codified common-law right of recoupment.[6]

■ It is well established that a debtor who assumes an executory contract under the provisions of the Act must assume both the benefits and the burdens of that contract; he may not pick and choose among the provisions therein. *See,* 11 U.S.C. § 365; *See also, In Re Italian Cook Oil Corp.,* 190 F.2d 994 (3rd Cir.1951); *Atchison, T. & S.F. Ry. Co. v. Hurley,* 153 F. 503 (8th Cir.1907), *aff'd.,* 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729 (1909); *Blue Cross of Western Pa. v. Monsour Medical Center, supra* at 1018. The right, defense of, or counterclaim for recoupment arises in the context of a suit on a contract, the plea being made in reliance upon provisions of that same contract. The rationale is that there is but one recovery due on a contract, and that recovery must be determined by taking into account the mutual benefits and obligations of the contract. Thus, recoupment differs from setoff in that, in recoupment, the plea is intrinsic to the primary cause, whereas with setoff, the plea will be extrinsic to, although an abatement of, the primary cause.

■ It is quite apparent that the concepts inherent in the assumption of contracts and in the recoupment right are complementary and provide a common ground for decision. As suggested earlier, this Court believes that if the New York courts were squarely presented with this issue, they would conclude that the State Unemployment Insurance Law establishes a continuing and ongoing relationship, and that recovery of overpayments from future benefits was, in fact, an exercise of the State's common-law right of recoupment. Thus, while the discharge, if forthcoming in this case, would bar one remedy of the State, its recoupment right would survive.

The Court concludes that the exercise of that right does not violate the provisions of the automatic stay. Accordingly, the motion, in all respects, is denied.

So Ordered.

---

4. *See, Mullen v. United States,* 696 F.2d 470 (6th Cir.1983); *New York City Employees Retirement System v. Villarie,* 648 F.2d 810 (2d Cir.1981); *In Re Killian,* 22 B.R. 551 (Bkrtcy.E.D.N.Y.1982).

5. *See, Blue Cross of Western Pa. v. Monsour Medical Center,* 11 B.R. 1014 (D.C., W.D.Pa.

1981); *In Re Berger,* 16 B.R. 236 (Bkrtcy.S.D. Fla.1981).

6. *See, Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (D.C., W.D.Tenn.1981); *In Re Yonkers Hamilton Sanitarium Inc.,* 22 B.R. 427 (Bkrtcy.S.D.N.Y.1982).