In re ALPCO, INC., Debtor.

Thomas R. NOLAND, Trustee in Bankruptcy for Alpco, Inc., Plaintiff,

v.

TURNER CONSTRUCTION COMPANY et al., Defendants.

Bankruptcy No. 3–84–00517.
Adv. No. 3–85–0079.

United States Bankruptcy Court,
S.D. Ohio, W. D.

May 12, 1986.

Mark H. Klusmeier, Cincinnati, Ohio, for Turner Const. Co.

John R. Doll, Dayton, Ohio, for defendant Carpenters Dist. Council.

Thomas R. Noland, Dayton Ohio, trustee.

Paul B. Calico, Cincinnatti, Ohio, for HWZ, Straus, Troy & Ruehlman Co.

## DECISION AND ORDER

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court on motions for summary judgment filed by the following defendants: Turner Construction Company ("Turner"), Hoge-Warren-Zimmerman Company ("HWZ"), Miami Valley Carpenters District Council Pension Fund ("Pension Fund"), Miami Valley Carpenters District Council Health and Welfare Fund ("Health and Welfare Fund"), and Miami Valley Carpenters District Council ("District Council"). Plaintiff is the Trustee in Bankruptcy for the estate of Alpco, Inc., which was formerly a "debtor in possession" under Chapter 11 of the Bankruptcy Code, but because of conversion is now a debtor under Chapter 7.

In conjunction with the motions for summary judgment a joint pretrial order was submitted by the parties. The relevant portions of that order are as follows:

## 2. GENERAL NATURE OF THE CLAIMS OF THE PARTIES:

(a) Complainant claims entitlement to funds being held by respondent Turner on the basis that such funds are owed by Turner to Alpco, Inc., for whose Estate in Bankruptcy complainant is Trustee.

(b) Respondent Turner claims that it is subject to multiple and conflicting claims to the funds it holds which are the subject of complainant's action, and seeks the Court's ruling on entitlement to those funds, and, if appropriate, to funds paid by it under this Court's Order of May 30, 1984.

(c) Respondent Pension Fund claims entitlement to the funds held by Turner and claimed by the complainant, and to funds held by the complainant herein, based upon a judgment entered against the bankrupt Alpco, Inc., and a garnishment in execution of said judgment, served on respondent Turner.

(d) Respondent Health Fund claims: an interest in the Fund held by Turner only to the extent that said Funds are a part of the bankruptcy estate. The Health Fund contends that its claim to the funds has priority status pursuant to § 507(a)(1) and § 507(a)(4) of the Bankruptcy Code.

(e) Respondent District Council claims: an interest in the funds held by Turner only to the extent that said funds are a part of the bankruptcy estate. The District Council contends that its claim to the funds has priority status pursuant to § 507(a)(1) and § 507(a)(3) of the Bankruptcy Code.

(f) Respondent HWZ claims entitlement to a portion of the funds being held by Turner and claimed by the complainant totalling $14,603.83, based upon the terms of Alpco's contract with Turner and a Mechanic's Lien filed by HWZ.

## 3. UNCONTROVERTED FACTS.

The following facts are established by admissions in the pleadings or by stipulations of counsel at the pretrial conference.

(a) Alpco, Inc. Debtor herein, contracted with respondent Turner to provide ceiling work on the Miami Valley Hospital Project. The contract was signed on May 19, 1982.

(b) Alpco, Inc. at the time it performed the work on the Miami Valley Hospital project pursuant to its contract with Respondent Turner, was signatory to a collective bargaining agreement with the Miami Valley Carpenters District Council which required Alpco, Inc. to make appropriate contributions to the Respondent's Pension Fund and Health Fund, and also required Alpco, Inc. to make dues deduction payments directly to Respondent District Council.

(c) On February 11, 1983, respondent Pension Fund was granted a judgment against Alpco, Inc. in the amount of $18,391.18 plus interest at the rate of 1.7% per month, attorneys' fees of $1,500.00, and costs by the Court of Common Pleas of Montgom-

ery County, Ohio, in an action captioned *Miami Valley Carpenters District Council Pension Fund v. Alpco, Inc.*, Case No. 82–2238.

(d) On October 25, 1983, respondent Pension Fund filed with the Court of Common Pleas of Montgomery County, Ohio, certain documents purported to be a garnishment directed at respondent Turner in connection with Pension Fund's February, 1983 judgment against Alpco, Inc. Said documents were served upon respondent Turner by a Montgomery County, Ohio, Sheriff's Deputy on October 27, 1983.

(e) The documents filed by respondent Pension Fund with the Court of Common Pleas and served upon Turner contained a statement directing respondent Turner to respond to the documents on or before a certain date. The blank which was intended to contain that specific date was uncompleted and left blank by either respondent Pension Fund, or the Court of Common Pleas, or both.

(f) Respondent Turner did not respond to the documents.

(g) Prior to the time the purported garnishment documents were served upon respondent Turner, Alpco had completed a portion of its contract and had been paid therefor.

(h) Subsequent to the prior payments, and before service of the purported garnishment documents upon respondent Turner, Alpco had proceeded to install a certain value of work (the precise amount of which is in dispute), which work was, at the time of service of the purported garnishment documents, in place and unpaid-for.

(i) At the time the purported garnishment documents were served upon respondent Turner, neither Alpco, nor any other party had initiated or taken any of the various administrative steps required under Alpco's contract with Turner for Alpco to submit to Turner and document a request for payment for the work then in place and unpaid-for.

(j) Subsequent to the service of the purported garnishment documents upon re-spondent Turner, Alpco installed additional work on the Miami Valley Hospital Project.

(k) In connection with Alpco's work on the Miami Valley Hospital Project, Alpco purchased certain materials from respondent HWZ.

(l) Alpco failed to pay respondent HWZ for said materials.

(m) The failure of Alpco to pay HWZ for the materials purchased from it constituted a breach by Alpco of its contract with Turner.

(n) On March 13, 1984, Alpco, Inc. filed its petition herein under Chapter 11 of the Bankruptcy Code.

(o) On April 2, 1984, respondent HWZ filed and recorded a Mechanic's Lien on the property of the Miami Valley Hospital, in connection with Alpco's unpaid debt to it. Said Lien was in the amount of $14,603.83.

(p) The filing of the Mechanic's Lien by respondent HWZ constituted a breach by Alpco of its contract with respondent Turner.

(q) On May 30, 1984, The United States Bankruptcy Court for the Southern District of Ohio, Western Division, in the within action, and over the signature of Hon. Charles A. Anderson, placed of record an Agreed Entry, ordering respondent Turner to pay to the then Debtor-in-Possession, the sum of $38,953.00 together with any further monies which might become due to Alpco, when such monies became due.

(r) Respondents Pension Fund, Health & Welfare Fund, District Council and HWZ, among others not including respondent Turner, endorsed the May 30, 1984 Order of the Bankruptcy Court.

(s) Shortly after the entry of the May 30 Order, and in compliance therewith, respondent Turner paid to the Debtor-in-Possession the sum of $38,953.00.

(t) Under the terms of the May 30 Order, the monies paid to the Debtor-in-Possession by Turner were to be held in an interest-bearing account, for which the attorney for the Debtor-in-Possession and the attorney for the unsecured creditors' committee

were to be required signators, there to be held by them pending further Order of the Court.

(u) On December 6, 1984, the within action was converted to a proceeding under Chapter 7 of the Bankruptcy Code.

(v) Thomas R. Noland, Esq., is the duly appointed Trustee-in-Bankruptcy of the Estate of the debtor herein.

(w) On March 8, 1985, respondent Pension Fund filed suit in the Court of Common Pleas of Montgomery County, Ohio, against respondent Turner, in a case captioned *Miami Valley Carpenters District Council Pension Fund v. Turner Construction Co.*, Case No. 85–668, seeking damages under Ohio Revised Code § 2716.-21(F) for Turner's alleged wrongful failure to comply with the October, 1983 garnishment.

(x) On April 17, 1985, complainant Thomas R. Noland, Trustee, filed the Complaint in the within adversary action, seeking to have respondent Turner turn over to him as trustee, all funds held by Turner and owed to or on account of Alpco's contract.

(y) Respondent Turner presently holds $20,824.00 in connection with Alpco's contract on the Miami Valley Hospital.

4. CONTESTED ISSUES OF FACT.

The contested issues of fact remaining for decision are:

(a) What was the dollar value of the work installed by Alpco and in place but unpaid for on the date the purported garnishment documents were served upon respondent Turner by respondent Pension Fund?

(b) What was the dollar value installed by Alpco and in place but unpaid for between dates of October 27, 1983 and December 16, 1983?

(c) What was the dollar value of the work installed by Alpco and in place but unpaid for between the dates of October 27, 1983 and March 14, 1984?

## I. THE RIGHTS OF TURNER

Pursuant to an order of this court, Turner has previously paid to Alpco, Inc., as a "debtor in possession," the sum of $38,-953.00, and presently Turner holds $20,-824.00, which the trustee asserts is payable in full to the bankruptcy estate of Alpco, Inc. These two amounts, although being held in two locations, do not represent two legally distinct funds. They merely comprise earnings generated by Alpco's performance of its construction contract with Turner.

At this stage of the proceedings, it appears that Turner will ultimately be responsible for paying the amount of HWZ's mechanic's lien. Despite Turner's apparent liability to HWZ, the trustee took the position during oral argument on the motions for summary judgment that Turner should not be permitted to offset any claim against Alpco's estate. The trustee stated that not only was there a lack of mutuality, but that the setoff was being asserted post-petition, and thus any attempted setoff is prohibited.

Crucial to the resolution of Turner's rights is observance of the distinction between *setoff* and *recoupment.* The United States Court of Appeals for the Third Circuit has analyzed this distinction in the following manner:

"The doctrines of "setoff" and "recoupment" had their origins in the era of common law pleading, under which the scope of a "case" was far less inclusive than it is today, and under which claim joinder was far narrower. Both doctrines permitted countervailing claims, which otherwise could not have been asserted together, to be raised in a case based on any one of them. Both doctrines were subsequently adopted in bankruptcy, setoff by statute, ... and recoupment by decision.... In bankruptcy, however, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. *See* 11 U.S.C. § 506(a). Setoff is limited, however, by the provisions of 11 U.S.C. § 553.

Among those limitations is that pre-petition claims against the debtor cannot be setoff against post-petition debts to the debtor. Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984) (citation omitted).

Further, "[t]he distinction between a recoupment and a setoff is that a recoupment, unlike a setoff, does not involve the concept of mutuality of obligations and arises out of a *single* transaction between creditor and debtor." *In re Yonkers Hamilton Sanitarium, Inc.,* 34 B.R. 385, 386 (D.S.D.N.Y.1983) (emphasis added) (citations omitted). "[S]etoff involves a claim of the defendant against a plaintiff which arises out of a transaction which is *different* from that on which the plaintiff's claim is based." *In re Clowards, Inc.,* 42 B.R. 627, 628 (Bankr.Idaho 1984) (emphasis added). "The only real requirement regarding recoupment is that a sum can be reduced only by matters or claims arising out of the same transaction as the original sum." *Waldschmidt v. CBS, Inc.,* 14 B.R. 309, 314 (D.M.D.Tenn.1981).

■ We also observe that nothing in the Bankruptcy Reform Act of 1978 repealed the doctrine of recoupment, nor is the doctrine subject to the setoff provisions of 11 U.S.C. § 553. *In re Yonkers Hamilton Sanitarium, Inc., supra.*

■ In the instant matter there was but one contract between Turner and Alpco, Inc., which covered the construction work to be performed by Alpco at Miami Valley Hospital. Clearly, a single contract may be considered as one transaction for the purposes of recoupment. *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262, 266 (D.Utah 1983). Subsequent to the filing of its Chapter 11 petition, it appears that Alpco, Inc., as a debtor in possession continued to perform its contract with Turner. "Even where court approval was not obtained, the debtor-in-possession may be deemed to have adopted the contract where it received benefits." *Id.* at 265 (Citation Omitted). Here, the trustee is not entitled to the entire proceeds of Alpco's contract with Turner without regard to the provisions of that contract. "A contract assumed in bankruptcy is accompanied by all its provisions, and conditions. It may not be assumed in part and rejected in part." *In re Nitec Paper Corp.,* 43 B.R. 492, 498 (D.S.D.N.Y.1984).

To determine the amount that is recoverable by the trustee from Turner, we apply a basic rationale of recoupment "that there is but one recovery due on a contract, and that recovery must be determined by taking into account the mutual benefits and obligations of the contract." *In re Maine,* 32 B.R. 452, 455 (Bankr.W.D.N.Y.1983). One commentator has succinctly summarized this approach as follows:

Certainly in any suit or action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to former Section 68, or to Section 553(a). *Collier on Bankruptcy* ¶ 553.03 at 553–12 (15th ed. 1985).

Specifically, the contract between Turner and Alpco, Inc. contained the following provisions:

MONTHLY ESTIMATE

On or before the last day of each month the Subcontractor [Alpco, Inc.] shall submit to Turner, in the form required by Turner, a written requisition for payment showing the proportion-

ate value of the Work installed to that date, from which shall be deducted: a reserve of ten per cent (10%); all previous payments; and all charges for services, materials, equipment· and other items furnished by Turner to or chargeable to the Subcontractor; and the balance of the amount of such requisition, as approved by Turner and the Architect and for which payment has been received by Turner from the Owner, [Miami Valley Hospital] shall be due and paid to the Subcontractor on or about the fifteenth (15th) day of the succeeding month.

The Subcontractor shall submit with its first requisition for payment a detailed schedule showing the breakdown of the Price into its various parts for use only as a basis of checking the Subcontractor's monthly requisitions.

Turner reserves the right to advance the date of any payment (including the final payment) under this Agreement if, in its sole judgment, it becomes desirable to do so.

The Subcontractor agrees that, if and when requested so to do by Turner, it shall furnish such information, evidence and substantiation as Turner may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Work, all payments made by the Subcontractor thereon, and the amounts remaining unpaid, to whom and the reasons therefor.

### FINAL PAYMENT

The final payment shall be due within forty (40) days after completion and acceptance of the Work by Turner and the Architect, provided first, however, that (1) Turner shall have received final payment therefor from the Owner, (2) the Subcontractor shall have furnished evidence satisfactory to Turner that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with the Work and (3) the Subcontractor shall have executed and delivered in a form satisfactory to Turner a General Release running to and in favor of Turner and the Owner. Should there prove to be any such claim, obligation or lien after final payment is made, the Subcontractor shall refund to Turner all monies that Turner and/or the Owner shall pay in satisfying, discharging or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith.

### PAYMENTS WITHHELD

If any claim or lien is made or filed with or against Turner, the Owner, the Project or the Premises by any person claiming that the Subcontractor or any subcontractor or other person under it has failed to make payment for any labor, services, materials, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Work, or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, Turner or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any subcontractor or other person under it causes damage to the Work or to any othe. work on the Project, or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Agreement, Turner shall have the right to retain from any payment then due or thereafter to become due an amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage, failure or default, and (3) compensate Turner and the Owner for and indemnify them against any and all losses, liability, damages, costs and expenses, including legal fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith. Turner shall have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes.

If the amount retained is insufficient therefor, the Subcontractor shall be liable for the difference and pay the same to Turner.

█ On the basis of the contractual provisions between Turner and Alpco, Inc., Turner is tentatively permitted to recoup $14,603.83 (see Stipulated Fact O) from the proceeds of Alpco's contract in order to satisfy the claim of HWZ. This portion of the court order will be finalized upon representation by all parties that $14,603.83 is the entire amount due and owing to HWZ.

Because of the decision above, it is unnecessary to decide whether the mechanic's lien of HWZ entitled it to any direct rights, other than as an unsecured creditor, against the estate of Alpco, Inc.

### II  THE PENSION FUND'S GARNISHMENT

█ Initially this Court disagrees with Turner's contention that the Pension Fund

waived any rights it may have by agreeing to the order of May 30, 1984, which required Turner to turn over $38,953.00 to Alpco, Inc. The order specifically provided that "[s]aid moneys shall be held as the respective interests of the parties may appear, with all liens or interests of parties therein, if any, attaching thereto, said interest to be determined upon further Order of this Court."

In order to grant summary judgment to a movant, it is required that there be "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

At this time genuine issues as to material facts exist. As indicated in the parties' joint pretrial order, one of the contested issues of fact is the amount of work not paid for on the date of the Pension Fund's attempted garnishment. The court believes it necessary to know this amount as well as any contractually authorized deductions that would have been claimed by Turner on the date it was served with the garnishment papers. In addition the Court deems it important to know the manner in which Alpco, Inc. was previously paid during the course of its contract with Turner. Specifically, were the contractual provisions regarding documentation prior to payment strictly complied with? It appears that a hearing is required regarding these matters.

Once the facts, mentioned above, have been clearly established, this court must consult state law to determine the effect of the garnishment by the Pension Fund. Although a review of Ohio's law on garnishment would be premature and inappropriate, we do note, as the parties have no doubt already discovered, that Ohio's law is not abundantly clear regarding the Pension Fund's garnishment. In particular, we have been unable to locate any reported Ohio case on the garnishment (or attachment) of a debtor's interest in a construction contract.

The court has been informed that there is currently in the state courts a case involving Turner and the Pension Fund concerning the garnishment efforts of the Pension Fund. In view of the fact that this court has found it necessary to determine a question of state law, that the requisite law is not easily ascertainable, and that the precise legal question is already before a forum vested with authority to pronounce the relevant law, would it not be preferable in the interests of justice to permit the state court to proceed?

To assist this court, it is requested that all parties inform this court within three weeks of their position regarding the possibility of this court's abstention from deciding the effect of the Pension Fund's garnishment under state law. All parties should be aware that it may also be necessary for this court to fashion an equitable solution regarding the rights of the Pension Fund in this matter.

## III. RIGHTS OF TRUSTEE AGAINST THE PENSION FUND

During oral argument the trustee maintained that because the funds in Turner's possession had not been actually seized by the Pension Fund, he is entitled to avoid any purported interest of the Pension Fund or transfer of the funds under 11 U.S.C. § 544. In support of his position the trustee refers the court to *Butz v. BancOhio National Bank*, 13 B.R. 425 (Bankr.S.D. Ohio 1981). In *Butz* the court made the following observation:

> [U]nder Ohio law, a levying creditor has a superior interest in levied property over the judicial liens of other levying creditors if (1) delivery of the writ of execution to the Sheriff is "first in time" and (2) a lien is in fact created by the Sheriff's seizure of the property. *Id.* at 428.

However, *Butz* involved a different section of the Ohio Revised Code than is involved in the current adversary proceed-

ing. Chapter 2329 of the Ohio Revised Code is concerned with "Execution Against Property" and was the relevant chapter in the *Butz* decision. In connection with execution against property, Ohio law provides that "[g]oods and chattels of a judgment debtor shall be *bound* from the time they are *seized* in execution." OHIO REV. CODE ANN. § 2329.03 (Page 1981) (Emphasis Added). *Butz* merely applied the statutory provisions of Ohio law. In the instant matter, Chapter 2329 of the Ohio Revised Code is not pertinent. Rather, the Pension Fund attempted a post-judgment garnishment and this procedure is governed by Chapter 2716 of the Ohio Revised Code. There it is specifically provided that an order of garnishment "shall *bind* the property, other than personal earnings, of the defendant in the possession of the garnishee from the *time of service.*" OHIO REV. CODE ANN. § 2716.13 (Page Supp. 1984) (Emphasis Added). As discussed, it is not entirely clear under Ohio law whether the Pension Fund's garnishment order successfully reached an asset of Alpco, Inc.; but if it did, the attachment was effective at the time of service of the order, and seizure of the asset is not relevant. *Butz* is simply not applicable to the present case.

## IV. THE "DISTRICT COUNCIL" AND THE "HEALTH AND WELFARE FUND"

The District council and the Health and Welfare Fund maintain that they are entitled to a priority status regarding the debtor's estate pursuant to 11 U.S.C. § 507. Although both have joined in the Pension Fund's Motion for summary judgment, there is no reference in the Pension Fund's memorandum of law supporting the position of the District Council and the Health and Welfare Fund. Whether these two defendants are entitled to priority status is not closely connected to the present litigation and should be adjudicated in a separate proceeding. For that reason their motions for summary judgment will be denied.

For the foregoing reasons IT IS HEREBY ORDERED that

1) Turner be permitted to recoup from the proceeds of the construction contract the amount of its liability to HWZ, and that the parties submit an entry within three weeks stipulating the amount of that liability or the reasons why the amount cannot be stipulated;

2) All parties within three weeks submit a brief statement of position regarding the possibility of this court abstaining from deciding the effect of the Pension Fund's garnishment under Ohio law;

3) The motions of the District Council and the Health and Welfare Fund for summary judgment are denied.