**In re Joanette ROSS, Debtor.**

**Joanette ROSS, Respondent/Plaintiff,**

v.

**MISSOURI DIVISION OF EMPLOYMENT SECURITY,**
**Appellant/Defendant.**

**No. 88–873–C (4).**

United States District Court,
E.D. Missouri, E.D.

Feb. 21, 1989.

As Amended March 15, 1989.

T.J. Mullin and Eileen Voss, St. Louis, Mo., for plaintiff/debtor/respondent.

Larry Ruhmann, Missouri Div. of Employment Sec., St. Louis, Mo., and Ninion S. Riley, Jefferson City, Mo., for defendant/appellant.

MEMORANDUM

CAHILL, District Judge.

This matter comes before the Court on appeal from a decision of the United States Bankruptcy Court, Eastern District of Missouri. 83 B.R. 673.

Appellee Joanette Ross filed a complaint in the bankruptcy court against the Missouri Division of Employment Security (MDES), appellant, to recover unemployment compensation benefits withheld by MDES while Ms. Ross was protected by Chapter 13's debtor status. The bankruptcy court held that withholding unemploy-

ment benefits to "offset" pre-petition overpayments violated the automatic stay provisions of 11 U.S.C. § 362 and ordered MDES to pay Ms. Ross the benefits withheld. In so ruling, the court also rejected MDES's argument that its collection of overpaid benefits constituted an · exercise of the state's police power and, therefore, was exempt from the automatic stay requirements pursuant to 11 U.S.C. § 362(b)(4). This appeal followed and for the reasons set forth below, the Court now reverses the bankruptcy court's order.

A district court reviews the findings of fact of a bankruptcy court for clear error and the conclusions of law de novo. *In re Thompson*, 77 B.R. 113, 114 (N.D.Ohio 1987); *Matter of Pizza, Inc.*, 40 B.R. 1014, 1015 (D.Hawaii 1984). In the instant matter, the bankruptcy court adopted the parties' stipulation of facts in its order. This Court review, therefore, is limited to the legal conclusions reached below. A brief summary of the facts, however, is necessary for disposing of the legal issues which follow.

In 1983, Ms. Ross applied for and received unemployment compensation. The next year, MDES discovered that Ross had fraudulently obtained $1,500 in benefits and obtained a deputy's determination of overpayment which Ross did not appeal. Under MO.REV.STAT. § 288.380.11, this meant that MDES had an option to either execute on its judgment or reduce the overpayment from any future benefits Ross received. MDES chose the latter because by that time Ross had filed her petition for Chapter 13 bankruptcy.

Subsequent to filing the bankruptcy petition in 1985, Ross filed a new claim for unemployment compensation. MDES, in accordance with its statutory right to collect fraudulently obtained overpayments, notified Ross that she would not receive future benefits for the period of weeks of unemployment necessary to recoup the amount Ross owed. This direct action var-

ies from the ordinary bankruptcy procedure where a creditor files for repayment through the bankrupt debtor's plan. Ross objected to MDES's action and filed the instant lawsuit.

The central issue confronting the Court is whether the bankruptcy court erred in holding that MDES' recoupment of overpaid unemployment compensation benefits constituted an illegal set-off of a government entitlement in violation of 11 U.S.C. § 362(a)(1).[1]

In *In re Maine*, 32 B.R. 452 (Bankr.W.D. N.Y.1983), the court faced the identical question and determined that recovery of overpaid unemployment compensation constituted a common-law right of recoupment not stayed by 11 U.S.C. § 362. In *Maine*, the State of New York filed a claim against the debtor for unemployment compensation obtained prior to the debtor's bankruptcy through willful misrepresentations. *Id.* at 453. The state, as MDES did here, simply refused to pay future unemployment benefits to the debtor until the overpayments were satisfied by the debtor serving the requisite weeks of unemployment without payment. *Id.* at 453. The bankruptcy court determined that the nature of New York's action was that of a recoupment, not a set-off, and that the debtor had no property right as such to receive unemployment compensation from the state. The court analogized the relationship between a state and its citizens under the unemployment compensation laws to a form of societal contract. *Id.* at 454. As such, the court found that overpayments of unemployment benefits were subject to recoupment and did not violate the automatic stay provisions of 11 U.S.C. § 362. *Id.* at 455.

Despite the decision in *In re Maine, supra*, the Bankruptcy Court chose to rely instead on the Third Circuit's decision in *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984), to hold to the contrary. In *Schweiker*, the court held that the Social Security

---

**1.** 11 U.S.C. § 362(a) provides, in part, that a bankruptcy petition operates as a stay of "(1) the commencement or continuation ... of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

Administration could not reduce payments of benefits to a debtor after he was discharged under Chapter 13 to recover overpayments of benefits occurring both post- and pre-petition. *Id.* at 876. The court based its holding on the nature of social security benefits as social welfare entitlements rather than contractual rights. *Id.* Therefore, the court found that the obligation to repay pre-petition overpayments was a separate debt which, therefore, could not be set-off against post-petition debts to the debtor. *Id.*

■ In the decision at bar, the Bankruptcy Court failed to adequately reconcile the distinction between the nature of the benefits at issue and the difference between recoupment and set-off as the terms relate to 11 U.S.C. § 362. Unemployment compensation benefits, unlike social security benefits, are not the product of an employee's labor or the result of his individual contributions. *In re Maine,* 32 B.R. at 455. Rather, unemployment insurance premiums are compulsorily paid to the State by employers. The State then sets aside the monies as a safety net for persons involuntarily unemployed through no fault of their own. As such, a debtor does not have a property right in the unemployment compensation the same way she would in her social security benefits which she contributed to individually. Moreover, a debtor should not simply be permitted to avoid her pre-petition obligation to repay fraudulently obtained benefits by filing for bankruptcy and then filing a new claim for unemployment compensation. *Id.* Clearly, the pre-petition debt is part of the same quasi-contractual claim MDES was asserting against Ross' post-petition filing for benefits. As such, the distinction between recoupment and set-off is critical.

Recoupment was originally an equitable doctrine that permitted a defendant to meet a plaintiff's claim with a countervailing claim that arose out of the same transaction. *In re B & L Oil Co.,* 782 F.2d 155, 157 (10th Cir.1986). The distinction between recoupment and set-off remains important in bankruptcy cases today because setting off separate claims is permitted in only limited circumstances. *Id.* Recoupment, however, permits a creditor to receive preferred treatment when his claim arises out of the same transaction as that of the debtor's claim. *Id.* This result permits the creditor to use recoupment as a defense, thereby precluding the limitations on set-off as being inequitable. *Lee v. Schweiker,* 739 F.2d at 875. Here, MDES used recoupment of Ross' pre-petition overpayment as a defense to Ross' post-petition claim for benefits. Accordingly, the Bankruptcy Court erred in treating MDES' action as a set-off and therefore a violation of the automatic stay provisions.

The court in *In re Maine, supra,* recognized this important distinction to hold that overpayments of fraudulently obtained unemployment benefits are subject to recoupment. Similarly, courts have recognized the doctrine of recoupment to allow the Government to recover Medicare overpayments to a hospital that continued to operate after filing for Chapter 11 bankruptcy. *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bank.S.D.N.Y. 1982), *aff'd* 34 B.R. 385 (S.D.N.Y.1983). The court in *In re Midwest Service and Supply Co.,* 44 B.R. 262 (D.Utah 1983), permitted the Government to recoup overpayments of pre-petition progress payments from the final post-petition payment owed a debtor on a construction contract. In *In re American Central Airlines,* 60 B.R. 587 (Bankr.N.D.Iowa 1986), the Department of Transportation was allowed to recoup subsidy overpayments to the airline from post-petition payments. *See also In re B & L Oil Company,* 782 F.2d 155 (10th Cir.1986); *In re Clowards,* 42 B.R. 627 (Bankr.D.Idaho 1984); *In re Sherman,* 627 F.2d 594 (2d Cir.1980). Finally, the most persuasive case in addition to *In re Maine, supra,* is *Mullen v. United States,* 696 F.2d 470 (6th Cir.1983), where the court permitted the Air Force to recover pre-petition overpaid employment benefits from a post-petition debtor.

The rationale in all of these cases suggests that recoupment is appropriate where a debtor chooses to continue to accept the benefits from a claim upon which a creditor has a pre-petition claim for overpayment.

See In re Klingberg Schools, 68 B.R. 173 (N.D.Ill.1986). There is a parallel in the instant matter. Accordingly, the Court finds that MDES could recover its overpayments from Ross' post-petition claim for unemployment compensation under these circumstances.

Nonetheless, the Court recognizes the hardship that could occur when an unemployed bankrupt would have to forego this sole subsistence as a penalty for receiving excess payments for earlier claims, especially when the overpayments might have occurred a long time before. Equity demands some compromise. Therefore, this Court has urged, and counsel for both parties have agreed, not to proceed against this individual in this instance for collection of any portion of the remaining $1,500 of the overpaid benefits. Moreover, MDES has informed the Court that in future cases of this nature it will attempt to devise a plan to file a notice for recoupment with the Bankruptcy Court as a part of the debtor's reorganization plan rather than immediately denying unemployment benefits to a debtor for a period of weeks equal to the amount of overpayment. MDES's proposed approach appears to be more equitable than forcing an unemployed bankrupt debtor to forego her only form of sustenance for several months as penalization for receiving too much money from an earlier claim for benefits.

For the foregoing reasons the Court shall reverse the judgment of the United States Bankruptcy Court and will enter judgment for the appellant.