In the Matter of Charles E. **GAITHER** and Barbara J. Gaither, Debtors.

Bankruptcy No. 95–11897.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Aug. 23, 1996.

Jay T. Bosken, O'Connor, Acciani & Levy, Cincinnati, Ohio, for Petitioners.

Donnita Carroll, Asst. Attorney General, State of Ohio, Bureau of Employment Services, Revenue Recovery Section, Columbus, Ohio, for Respondent.

### ORDER DENYING DEBTORS' MOTION FOR CONTEMPT

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on the Debtors' motion to find the Ohio Bureau of Employment Services (OBES) in civil con-

tempt. (Doc. 20). The OBES has filed a response to the motion. (Doc. 23).[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

### Facts

In 1994 and 1995, the Debtors received unemployment benefits through the OBES. Subsequently, the OBES determined that the benefits collected by Barbara Gaither from July 2, 1994 to August 27, 1994, totaling $909, and the benefits collected by Charles Gaither from January 14, 1995 to February 11, 1995, totaling $590, were obtained by fraudulent misrepresentations. (OBES Resp. to Mot., Exs. A and B, doc. 22). Specifically, according to the OBES determinations, the Debtors were ineligible for unemployment benefits during these periods because of a failure to properly report that they "worked and had earnings during [these] weeks." (*Id.*). According to the OBES, the Debtors did not appeal the OBES determinations of fraudulent misrepresentation. (OBES Resp. to Mot. at 2, 3,).[2]

Pursuant to Ohio Revised Code § 4141.35, the OBES canceled the Debtors' benefit claims and ordered the Debtors to return the overpayments. Additionally, the OBES ordered any valid future benefit claims be applied to the overpayments until such are repaid in full.[3]

On May 15, 1995, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. The Debtors listed the OBES on their statements and schedules as an unsecured creditor for the overpaid benefits. The Debtors' confirmed plan provides for a 35 percent payout to allowed unsecured claims.

After filing the bankruptcy petition the Debtors submitted a new claim for unemployment benefits. The OBES withheld payment of the new claim, instead applying these benefits to the previous overpayment until such is paid in full. The issue before this Court is whether the OBES is in violation of the automatic stay for applying the postpetition unemployment benefits toward repayment of the prepetition overpayments. 11 U.S.C. § 362. In addressing this issue it is helpful to examine setoff and recoupment in bankruptcy and the cases applying these concepts to the repayment of unemployment benefits.

### Setoff and Recoupment

■ "The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* 516 U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258, 262 (1995) *citing, Studley v. Boylston National Bank,* 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313 (1913). The Bankruptcy Code does not create a federal right of setoff; however, subject to certain exceptions, 11 U.S.C. § 553(a) preserves any setoff rights

---

**1.** On April 3, 1996, the Court held a hearing on this matter at which the parties were granted additional time to submit supplemental authority. The OBES did not appear at the hearing. Counsel for the OBES subsequently contacted the Court to explain that OBES did not receive notice of the hearing. The OBES was allowed further time to file its response.

**2.** In distinguishing the instant case from factually similar cases the Debtors assert that "the OBES has not come forward with evidence that the alleged overpayment to the Debtors were the result of fraud.... If the claim of the OBES is based upon an allegation of fraud, the OBES should be required to present such allegations thereby allowing the Debtors an opportunity to respond." (Debtors' Supp.Auth. at 1–2).

The OBES Determination of Benefits states that the Debtors had 21 days to appeal the fraud-

ulent misrepresentations determination. (OBES Resp. to Mot., Exs. A and B). There is no evidence before this Court that the Debtors appealed within the allowed 21 days. Accordingly, this Court is not inclined to visit the question of whether the OBES claim is properly founded upon fraudulent misrepresentations.

**3.** O.R.C. § 4141.35 provides that if the administrator of the bureau of employment services finds that any fraudulent misrepresentation has been made by an applicant for benefits the administrator shall cancel such applicant's entire weekly claim or benefit rights, order the entire amount be repaid as a condition for the person to receive future benefits and withhold the unpaid amounts from any future benefit payments. Ohio Rev. Code Ann. § 4141.35(A)(1)–(3), (B)(1)(a) (Anderson Supp.1995).

which otherwise exist. *Strumpf,* at ——, 116 S.Ct. at 289.

■ Pursuant to § 553, a debt owed by a creditor to the debtor may be setoff against a claim the creditor holds against the debtor, however, only debts and claims which "arose before commencement of the case" may be setoff against each another, prepetition claims against a debtor cannot be · setoff against postpetition debts owed to the debtor. 11 U.S.C. § 553(a); *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984); *In re Maine,* 32 B.R. 452, 454 (Bankr.W.D.N.Y. 1983). A setoff requires mutual debts, generally arising out of separate transactions. *In re Alpco, Inc.,* 62 B.R. 184, 188 (Bankr. S.D.Ohio 1986); *In re Harmon,* 188 B.R. 421, 425 (Bankr.9th Cir.1995); *In re University Medical Center,* 973 F.2d 1065, 1079 (3rd Cir.1992). The exercise of a setoff is subject to the automatic stay, 11 U.S.C. § 362(a)(7); *Strumpf,* at ——, 116 S.Ct. at 289, and the bankruptcy discharge injunction. 11 U.S.C. § 524; *In re Maine,* 32 B.R. at 454. The application of a setoff is permissive and lies within the equitable discretion of the trial court. *In re Southern Indus. Banking Corp.,* 809 F.2d 329, 332 (6th Cir.1987).

■ Recoupment is an equitable doctrine. In contrast to setoff, recoupment is not mentioned by the Bankruptcy Code but rather is recognized through judicial decisions. *See, Reiter v. Cooper,* 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 1218 n. 2, 122 L.Ed.2d 604 (1993) ("It is well settled . . . that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment.") *see also, In re Heffernan Memorial Hosp. Dist.,* 192 B.R. 228, 230 (Bankr.S.D.Cal.1996); *In re American Sunlake Ltd. Partnership,* 109 B.R. 727, 730 (Bankr.W.D.Mich.1989). Unlike setoff, recoupment does not involve mutual debts, *In· re Alpco, Inc.,* 62 B.R. at 188; *In re Harmon,* 188 B.R. at 425; *In re Heffernan Memorial Hosp. Dist.,* 192 B.R. at 230, and is not subject to the automatic stay. *In re Maine,* 32 B.R. at 455. Because recoupment only reduces a debt, rather than constituting an independent basis for a debt, it is not a claim in bankruptcy, therefore, it is not subject to the discharge injunction. *In re Maine,* 32 B.R. at 455; *In re Harmon,* 188 B.R. at 425.

■ Recoupment "is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and [is applied when] the limitations on setoff in bankruptcy would be inequitable." *Lee,* 739 F.2d at 875 (alteration added); *In re University Medical Center,* 973 F.2d at 1079–80. "In recoupment, the elements of the debt may arise either before or after the commencement of the case." *In re Harmon,* 188 B.R. at 425. "The only real requirement regarding recoupment is that the sum can be reduced only by matters arising out of the same transaction as the original sum." *Waldschmidt v. CBS, Inc.,* 14 B.R. 309, 314 (M.D.Tenn.1981).

■ An express contractual right to recoupment is not necessary for a creditor to exercise recoupment, nor does the mere fact that a contract exists between a creditor and a debtor automatically allow a creditor to. exercise recoupment. *In re University Medical Center,* 973 F.2d at 1080. In bankruptcy, however, recoupment "has been applied primarily where [the relevant claims] arise out of the same contract." *Lee,* 739 F.2d at 875 (alteration added), *see also, In re Alpco, Inc.,* 62 B.R. at 188 ("a single contract may be considered as one transaction for the purposes of recoupment").

With the understanding that a contract may satisfy the "same transaction" requirement, the bankruptcy cases addressing the recoupment and setoff of overpaid unemployment benefits examine whether filing for unemployment benefits pursuant to a state statute is viewed as similar to a contract or more like a statutory social entitlement. If viewed as similar to a contract, the "same transaction" requirement may be satisfied. Depending on the factual situation, equity considerations may then allow recoupment.

## The Parties Contentions

The Debtors rely principally on *In re Ross*, 83 B.R. 673 (Bankr.E.D.Mo.1988).[4] *Ross* is factually identical to the instant case and addressed the issue of whether the Missouri Division of Employment Security (MDES) violated the automatic stay by withholding and applying the debtor's postpetition unemployment benefits against prepetition overpayments obtained by the debtor through fraud.

In *Ross*, the bankruptcy court relied upon the reasoning of *Lee v. Schweiker, supra*. *Lee* involved the Social Security Administration (SSA) withholding a debtor's postpetition social security benefits to recover prepetition benefit overpayments. In *Lee*, the SSA argued that it was simply exercising a right of recoupment. The court disagreed, stating that a social welfare statute is an entitlement and therefore is not similar to a contract. *Lee*, 739 F.2d at 876. In *Lee*, the court viewed the social security payments as separate transactions independently made on a monthly basis according to the recipient's entitlement eligibility. Because each month was viewed as a separate transaction the debtor's obligation to repay previous over-payments was not subject to recoupment but rather "the ordinary rules of bankruptcy," which limited the SSA to recovery of the prepetition overpayments through a setoff. 739 F.2d at 875–76. Ultimately, the court held that § 553(a) prevented the SSA from setting-off prepetition monthly overpayments with monthly benefits payable postpetition. *Id.* at 876.

The bankruptcy court in *Ross* adopted the reasoning of *Lee*, viewing unemployment insurance as "more akin to other social welfare programs" than to a contract. 83 B.R. at 675. Viewing the claims as not arising from the same transaction, the bankruptcy court held that the MDES did not exercise a recoupment but rather violated the automatic stay when it setoff the debtor's postpetition unemployment benefits against prepetition overpayments. *Id.*

On appeal of *Ross*, however, the district court reversed the bankruptcy court, stating that the bankruptcy court should have followed the reasoning of *In re Maine, supra*.[5] *In re Ross*, 104 B.R. 171, 172 (E.D.Mo.1989). *In re Maine*, looks upon the right to receive

---

**4.** The Debtors have cited additional cases as supplemental authorities in support of their contentions.

*In re University Medical Center*, 973 F.2d 1065 (3rd Cir.1992), involved the withholding of the debtor's postpetition 1988 Medicare reimbursement payments to recover prepetition 1985 Medicare overpayments made to the debtor. The court determined that Medicare regulations require any overpayments be recovered from the year in which the overpayments occurred. Finding this regulatory requirement dispositive, the court disallowed recoupment holding that the prepetition 1985 overpayments arose from different transactions, i.e.,—a separate year's contract—than the postpetition 1988 payments. *Id.* at 1080–82. The dispositive facts of *University Medical Center* distinguish it from the instant case. The Ohio Unemployment Compensation Act does not require that the overpayment and the recovery occur in the same year, rather the Ohio statute allows recovery of the overpayments "within three years from the date the administrator's order requiring payment became final." § 4141.35(B)(3).

In *Crabtree v. Veterans Administration*, 31 B.R. 95 (Bankr.S.D.Ohio 1983), the Veterans Administration admitted violating the automatic stay through the use of a setoff when it withheld the debtor's disability checks to collect a prepetition debt. The only question before the bankruptcy court was whether the VA should be sanctioned for such violation. *Id.* at 96. In *Crabtree*, the court did not reach the issues of recoupment or setoff.

*In re Howell*, 4 B.R. 102 (Bankr.M.D.Tenn. 1980), addressed whether the Department of Labor's withholding of postpetition disability payments to recover prepetition overpayments was actually a setoff under 11 U.S.C. § 553. The bankruptcy court held that it was not a setoff because the required mutual debts were not present. *Id.* at 107–08. Recoupment was not addressed.

*In re Merchant*, 958 F.2d 738 (6th Cir.1992) and *In re Gustafson*, 111 B.R. 282 (Bankr.9th Cir.1990) *rev'd on other grounds* 934 F.2d 216 (9th Cir.1991), hold that withholding a debtor's college transcript until a prepetition debt is paid constitutes an act to collect on the debt, a violation of the automatic stay. Neither *Merchant* or *Gustafson* addresses recoupment or setoff.

**5.** *In re Maine*, also factually identical to the instant case, involved the New York States Department of Labor (NYSDL) and addressed the issue of whether the NYSDL violated the automatic stay by withholding and applying the debtor's postpetition unemployment benefits against prepetition overpayments obtained by the debtor through willful misrepresentation.

unemployment benefits as more "likened to ... a societal contract" than a statutory social welfare entitlement. 32 B.R. at 454. The court in *In re Maine* allowed recoupment of the overpaid benefits because the debtor and the creditor's claims arose from the same societal contract for unemployment compensation. 32 B.R. at 455.

The district court in *Ross* adopted the "societal contract" reasoning of *In re Maine*. In doing so the district court in *Ross* agreed with the *In re Maine* analysis differentiating social security entitlements from the more contractual-like unemployment insurance compensation benefits. Essentially, *In re Maine* posits that unlike social security benefits, unemployment insurance benefits are not the product of an employees's labor or contributions, but rather the result of unemployment insurance taxes paid by employers to fund a pool of money against which involuntarily unemployed persons may file a claim and draw benefits. "As such, a debtor does not have a property right in the unemployment compensation the same way she would in her social security benefits which she contributed to individually." 104 B.R. at 173; *In re Maine*, 32 B.R. at 454.

In reversing the bankruptcy court, the district court in *Ross* held that the MDES did not violate the automatic stay by improperly exercising a setoff. Rather, because the MDES and the debtor's claims arose from the same "societal contract" for unemployment compensation, the MDES properly invoked its common law right of recoupment. *In re Ross*, 104 B.R. at 173–74. The OBES contends that this court should follow the reasoning of the district court opinion in *Ross*, asserting that the OBES is entitled to recoup the overpayments from the Debtors.[6]

This Court agrees with the reasoning of *In re Maine* and the district court in *Ross*. When the Debtors filed their initial claims for unemployment compensation the relationship they established with the OBES most resembles the societal contract outlined by *In re Maine* and by the district court in *Ross*. The claims of the Debtors and the OBES arose from this single transaction. *See, e.g., In re Maine*, 32 B.R. at 455 (the State unemployment insurance statutory scheme "establishes a continuing and ongoing relationship" from which the relevant claims arose), *see also, In re Ross*, 104 B.R. at 173 ("the pre-petition debt is part of the same quasi-contractual claim the MDES was asserting against [the debtor's] post-petition filing for benefits").

In the instant case, the terms of the societal contract for unemployment benefits are set forth in the Ohio Unemployment Com-

---

**6.** Additionally, the OBES argues that its actions are exempt from the automatic stay pursuant to § 362(b)(4), which provides an exemption from the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4).

In the Sixth Circuit, there are two tests for determining whether a governmental action falls within the automatic stay or is excepted under the "police power" exception: the pecuniary purpose test and the public policy test. *In re Commerce Oil Co.*, 847 F.2d 291 (6th Cir.1988). The pecuniary purpose test asks whether the governmental proceeding relates primarily to protecting the government's pecuniary interest in the debtor's property or to matters of public safety. Only proceedings which relate to primarily to matters of public safety are excepted from the automatic stay. The public policy test examines whether the government is effectuating public policy or adjudicating private rights. Only those governmental proceedings that effectuate

public policy are excepted from the automatic stay. 847 F.2d at 295.

The OBES contends that its actions satisfy the public policy test because withholding the unemployment benefits effectuates the statutory mandated public policy of "protect[ing] the unemployment fund from fraudulent behavior." (OBES Resp. to Mot. at 5–6).

The result following from the OBES argument would require this Court to apply the test too broadly. Undoubtedly, it does not take much of an inquiry to uncover some "public policy" related to a statute, however, "[n]ot every action or proceeding by a governmental unit is excepted from the automatic stay" by § 362(b)(4). *N.L.R.B. v. Edward Cooper Painting Co.*, 804 F.2d 934, 941 (6th Cir.1986). In the instant case, the OBES action is nothing more than an effort to collect a debt, which is not excepted from the automatic stay by § 362(b)(4). *See, In re Commerce Oil Co.*, 847 F.2d at 295 ("Under either test, the state's actions should [be] stayed under 11 U.S.C. § 362 if the state was seeking a monetary sum merely as collection of a debt.")

pensation Act, which specifically provides for the recoupment of fraudulently obtained benefits. O.R.C. § 4141.35(A)(1)–(3), (B)(1)(a), (B)(3). Moreover, it is well established that upon entering into such a contract a debtor "must assume both the benefits and the burdens of that contract; [she] may not pick and chose among the provisions." *In re Maine,* 32 B.R. at 455. Specifically, a debtor "may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of "recoupment")." *Lee,* 739 F.2d at 876, *and B & L Oil Co.,* 782 F.2d 155, 157, 159 (10th Cir.1986). In the instant case, the Debtors may not assume the favorable aspect of receiving postpetition unemployment benefits while rejecting the unfavorable requirement of allowing the OBES to recoup the prepetition overpayments.

### Conclusion

The Debtors obtained the initial unemployment benefits through fraudulent misrepresentations. Consequently, this Court finds it equitable for the OBES to recoup the prepetition unemployment benefit overpayments from the postpetition unemployment payments. *See, In re Ross,* 104 B.R. at 173 ("a debtor should not simply be permitted to avoid her prepetition obligation to repay fraudulently obtained benefits by filing for bankruptcy and then filing a new claim for unemployment compensation"). Accordingly, the Debtors' motion to find the OBES in contempt is hereby denied.

**IT IS SO ORDERED.**