In re John P. O'BRIEN, Debtor.

STATE OF COLORADO, DIVISION OF CENTRAL SERVICES, CENTRAL COLLECTION SERVICE, as agent for Colorado Department of Labor and Employment, an agency of the State of Colorado, Plaintiff,

v.

John P. O'BRIEN, Defendant.

Bankruptcy No. 88 B 10968 A.
Adv. No. 89 C 0190.

United States Bankruptcy Court, D. Colorado.

Jan. 18, 1990.

---

J. Macol, Sp. Asst. Atty. Gen., Denver, Colo., for State of Colo.

M. Saiki, Denver, Colo., for John P. O'Brien, debtor.

FRANCIS G. CONRAD, Bankruptcy Judge.*

This adversary proceeding [1] is before us on the complaint of Colorado to determine

---

* Sitting by special designation.

1. We have jurisdiction to hear this adversary proceeding under 28 U.S.C. § 1334(b) and the general reference to this Court by the United States District Court for the District of Colorado, General Procedural Order No. 1984–3. This

whether unemployment benefits given Debtor were obtained by fraud. We find the benefits were obtained by fraud, and accordingly, hold the debt is not dischargeable in bankruptcy.

Colorado instituted this proceeding to collect an overpayment of unemployment benefits to Debtor. The evidence shows Debtor applied for unemployment benefits for the weeks ending 08/16/80, 08/23/80, 08/30/80, 09/06/80, 09/13/80, 10/04/80, 10/11/80, 11/08/80, 02/06/82, and 02/13/82. During the weeks Debtor received benefits, he was employed and earned net wages that exceeded the unemployment benefits received.

Debtor applied for the benefits on forms supplied by the Colorado Department of Labor and Employment. On each and every application Debtor indicated he was available for work; he performed no work during the period; and, in his own handwriting he recited he had searched for work and found none. With the exception of seven of the days he claimed he searched for work, he was employed. (Exhibits A & C). Debtor admitted he was employed while he was receiving benefits.

The determination of the overpayment due Colorado was derived from a hearing at which Debtor, after notice, failed to appear. Evidence was admitted in our Court in which Debtor acknowledged he owed Colorado an overpayment for unemployment compensation.

Debtor disputes that he intended to obtain the benefits by fraudulent misrepresentation. He advances a theory to parry Colorado's claim. Debtor testified he believed that while he was employed he was "banking" unemployment benefits. Debtor believed that when he needed them because of financial distress he could withdraw these "saved" benefits. Thus, he explains, "when he was laid off for a couple of weeks he wouldn't collect benefits but later, if he was in financial need, that is, when he needed it, he could use it." (i.e., collect his saved benefits).

Debtor also claims he believed Colorado knew about his other employment, and when he received his benefits this verified his belief. He testified that if he applied for benefits and Colorado believed it was wrong for him to receive them, Colorado would deny his unemployment applications. He thought Colorado had his unemployment record on a computer. To support his belief about the workings of unemployment benefits, that is, his concept of "banked benefits," Debtor says he acquired his understanding from a foreman at one of Debtor's jobs. Debtor's belief, however, doesn't coincide with his testimony that the foreman said he could collect unemployment benefits only when he was laid off. Nor is his belief congruous with his own initial testimony because he disclosed to us that he knew there was a one week waiting period of unemployment before a person could collect unemployment benefits. Finally, Debtor testified he never really read the unemployment forms, although it is clear he knew how to fill them out.

Colorado asserts claims under 11 U.S.C. § 523(a)(2)(A) and (B).[2] Colorado also asserts claims for penalties under the Colorado Employment Security Act,

---

is a core matter under 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R. Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

**2.** 11 U.S.C. § 523, **Exceptions to discharge,** provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ... (2) for money, property, services, or an extension, renewal, or financing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's of an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ...

11 U.S.C. § 523(a)(2)(A) and (B).

§ 8–81–101(4)(a)(II) [3] and collection costs under § 8–79–102(2). [4] Debtor states there was no fraudulent intent and that Colorado's reliance on the representations made in the benefit applications was unreasonable, or in the alternative, there was no reasonable reliance. Debtor argues Colorado produced no evidence that Exhibit A, the benefits application(s), was reviewed or considered prior to payment of the benefits. Finally, Debtor argues that unemployment compensation is a fund into which an employee pays, and when a person applies for benefits he receives back his own money. Thus, Debtor concludes he did not receive money from a creditor, but rather, received his own money.

Raised by Debtor during trial, but not raised in his brief, is the argument that Colorado failed to show that even with the misstatements on the application, Debtor may have received benefits anyway, and thus, there are no damages to sustain the complaint. Debtor's counsel raised this argument because one of Colorado's witnesses testified that even if a person works some hours, but no more than 32 hours, and earns wages less than the weekly benefits, the person may be entitled to receive benefits.

■ Before we begin our discussion of the issues, we need to address some procedural matters raised at the trial. Debtor moved to amend his pleadings to add the affirmative defenses of laches and statute of limitations. Colorado objected. We orally denied the motion because it was untimely raised within ten days of trial, in violation of our pre-trial Order, and would have resulted in undue prejudice to the plaintiff. We add to our oral ruling that failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case. See, F.R.Civ.P. Rules 8(c) and 15. See also, *Roe v. Sears, Roebuck & Co.*, 132 F.2d 829 (7th Cir.1943) (failure to plead statute of limitations is a waiver of the defense.). To the same effect for laches. See, *US v. A–1 Meat Co.*, 146 F.Supp. 590, 594 (S.D.N.Y.1956), aff'd, 255 F.2d 491 (2d Cir.1958).

■ We next address Colorado's § 523(a)(2)(B) claim because it can be easily disposed of with little analysis.

Colorado's § 523(a)(2)(B) claim is totally without merit or comprehension. A § 523(a)(2)(B) claim is based upon the use of a written false financial statement about the debtor's financial condition. We cannot conceive of any rational explanation that could show Debtor's unemployment benefits application is a written statement about a debtor's financial position. That it would show a debtor's employment posture, we agree. But it is not a financial statement, as that term is commonly understood, defining a debtor's pecuniary standing. Accordingly, Colorado's § 523(a)(2)(B) claim will be dismissed.

■ Debtor's argument that Colorado cannot be a creditor because Debtor is collecting his own contributed funds is also

**3.** § 8–81–101, **Penalties,** provides in pertinent part:

(4)(a)(II) If any person receives any such overpayment because of his false representation or willful failure to disclose a material fact, inequitability shall not be a consideration, and the person shall be required to pay one and one-half times the amount of the overpayment to the division for the fund. In addition, such person may be denied benefits, when otherwise eligible, for a four-week period for each one-week period in which he filed claims for or received benefits to which he was not entitled. The provisions of section 13–80–108(9), C.R.S., shall be used for determining when an offense is committed for purposes of this subparagraph (II).
CRS § 8–81–101(4)(a)(II) (1986 Cum.Supp.).

**4.** § 8–79–102, provides in pertinent part:

(2) The division, in its role as guardian of unemployment insurance trust fund dollars, is exempt from the provisions of section 24–30–202.4, C.R.S. If the division determines an account to be uncollectible, such account may be referred to the controller for collection. Reasonable fees for collection, as determined by the director of the division and the controller, shall be added to the amount of the debt. The debtor shall be liable for repayment of the total of the amount outstanding plus the collection fee. All money collected by the controller shall be returned to the division for credit to the fund; except that, all fees collected shall be retained by the controller. If less than the full amount is collected, the controller shall retain only a proportionate share of the collection fee.
CRS § 8–79–102(2) (1986 Cum.Supp.).

without merit. Employees do not make a contribution to Colorado's unemployment fund, employers do. Moreover, Colorado is clearly a creditor under 11 U.S.C. § 101(9)(A). This defense is denied. CRS 8–76–102; 8–70–103(20.4).

■ The issues to be decided are three:

(1) Did Debtor fraudulently represent his employment condition?

(2) If so, was Colorado's reliance reasonable? and,

(3) If the debt is found nondischargeable, is Colorado entitled to its penalty and collection fee?

We find Debtor fraudulently and willfully misrepresented his employment condition and that Colorado's reliance was reasonable. 11 U.S.C. § 523(a)(2)(A). We also hold the penalty is not subject to discharge, § 523(a)(7),[5] but that the collection fee is.

"Exceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge." *First Bank of Colorado Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 680 (10th Cir.1987), citing, *In re Black*, 787 F.2d 503, 505 (10th Cir.1986).

■ Proof of a § 523(a)(2)(A) violation must be by clear and convincing evidence, *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986) (squarely held § 523(a)(2) requires clear and convincing evidence), with the burden being on the party opposing discharge.

The elements necessary to prevent a discharge under § 523(a)(2)(A) are:

(1) the debtor made a false representation or a willful misrepresentation;

(2) such representation or misrepresentation was made with the intent to deceive the creditor;

(3) the creditor's reliance was reasonable; and,

(4) the creditor sustained a loss as a result of the debtor's representation or misrepresentation.

See, *In re Mullet*, id., at 680. "This section includes only those frauds involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or unmorality." *Black, supra*, 787 F.2d at 505.

Colorado has proven each of the elements by clear and convincing evidence. The facts show that Debtor willfully misrepresented his employment status, not once, but eight times. Moreover, he represented that he was looking for work, when, indeed, he was actually employed. He continued with this misrepresentation on the witness stand, at first stating he couldn't remember, and then conceding he was working when he received the unemployment benefits. We had the opportunity to observe Debtor while he gave this testimony, and quite frankly, we don't believe he didn't remember working. His later recollections of long ago events, especially under direct examination by his counsel, demonstrate a convenient memory, and to us, not a very convincing one.

Nor do we believe his testimony that he believed his benefits were similar to a savings account that he could draw on at any time. Debtor's counsel attempted to introduce testimony about Debtor's good character, which we cut off. We think the issue here is moral turpitude, whether Debtor intended his act, and whether he really believed his own understanding of how unemployment benefits were paid. We find he hoisted himself by his own petard when he testified his foreman told him "you can collect when you're laid off," and when he told us he knew there was a one-week waiting period of unemployment before he could collect benefits. His testimony showed he knew he could collect only if he wasn't working. Although in the unemployment benefits area "a plausible

---

**5.** 11 U.S.C. § 523, **Exceptions to discharge,** provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

... (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty— ...

explanation" for a misrepresentation is sufficient to escape liability, *Arizona Department of Economic Security v. Kaliff (In re Kaliff)*, 2 B.R. 465 (Bkrtcy.D.Ariz.1979), in this matter, the explanation is not plausible. The questions Debtor answered on his benefits application clearly show his understanding was not what he understood the application to mean. Nor did Debtor ever ask anyone at the employment office about his theory even though it flew squarely in the face of the unemployment benefits he was receiving. We find Debtor intended to deceive Colorado and he intended that Colorado rely upon his misrepresentation.

Debtor also advances that even if he deceived Colorado, § 523(a) requires reasonable reliance on the part of Colorado. Debtor asserts:

> Creditor produced no evidence that the allegedly false statements were relied on. Creditor produced no testimony or evidence that Exhibit A [benefits application] was reviewed or considered prior to payment. Creditor produced no witnesses, nor notes from the file, nor evidence of standard office procedure that Exhibit A was ever read prior to the decision to extend payment.

Debtor's unsolicited Post–Trial Brief at 3. Colorado claims it doesn't need to show reasonable reliance.

The standard of reasonable reliance in this Circuit is well settled that it is an independent ground. This standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon the debtor's representation. *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987). Colorado has satisfied that ground through Exhibit B; the payment of unemployment benefits.

Eligibility for unemployment benefits is determined by statute. Article 73, CRS (Supp.1986). A review of that statute indicates an individual's eligibility and amount of benefits shall be determined weekly and paid no less than once every two weeks, § 8–73–101(2).

Eligibility to receive benefits requires a finding that an individual:

(a) has registered with an employment office;

(b) has made a claim for benefits;

(c) is able and available for work;

(d) has been either totally or partially unemployed for a waiting period of one-week;

(e) has earned a base period wage;

(f) has total wages earned for a week less than his weekly benefit amount;

(g) is actively seeking work;

(h) furnishes the employment division with reports about his employment situation; and

(i) is not working due to disciplinary suspension.

§ 8–73–107, CRS (Supp.1986).

The form (Exhibit A), with the exception of condition (i), which is not at issue in this adversary proceeding, satisfies the statutory mandate. Moreover, the scheduled payments require a simplified process to ensure benefits are paid to satisfy this legislative declaration.

8–70–102. **Legislative declaration.** As a guide to the interpretation and application of this article, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the general assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The general assembly, therefore, declares that in its considered judgment the public

good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own. The process relies on the honest claimant to carry out the intent of the legislature. If we were to require more, that is, an immediate investigation to ensure only truly unemployed persons receive benefits, the system would bog down in delayed payments with the overwhelming burden of unemployment falling on those who deserve it the least, the honest and misfortunate unemployed worker and his family. We cannot see where Colorado is required to do more than satisfy the statutory mandate. Thus, we find Colorado has met the § 523(a)(2) reliance requirement, and that such reliance was reasonable.

The last issue is damages. We find from the evidence that Colorado is damaged in the amount of $1,334.00 less payments of $350.00 credited, for an amount owing of $984.00.

▬▬▬ Colorado also seeks allowance of collection fees under § 8–79–102(2), CRS (Supp.1986) and penalty assessed under §§ 8–81–101(1)(a) and (4)(a)(II).

In *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court recognized that Congress, in adopting Bankruptcy Code § 523(a)(7), yielded to the precept that obligations for criminal fines, penalties, and forfeitures would be excepted from Chapter 7 discharge in bankruptcy. See, *Pioneer General Ins. v. Midkiff (In re Midkiff)*, 86 B.R. 239, 243 (Bkrtcy.D.Colo.1988). The *Kelly* Court said:

> On its face, it [§ 523(a)(7)] creates a broad exception for all penal sanctions, whether they be denominated fines, penalties or forfeitures. Congress included two qualifying phrases; the fines must be both 'to and for the benefit of a governmental unit,' and 'not compensation for actual pecuniary loss.'

Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.

*Kelly v. Robinson*, 479 U.S. at 37, 107 S.Ct. at 362, 93 L.Ed.2d at 217.

*Kelly* makes it clear that the type of obligations which are excepted from discharge in bankruptcy proceedings under § 523(a)(7) are those which are essentially *penal* in nature to the particular debtor, whether they be denominated fines, penalties or forfeitures. See, *Midkiff*, supra, at 243.

A reading of § 8–79–102(2) shows the amount assessed against Debtor to be a collection fee, and thus dischargeable in bankruptcy. On the other hand, §§ 8–81–101(1)(a) and (4)(a)(II) are under a section designated as a penalty and clearly serve the purpose of a State protecting its citizens. The penalty here is for the benefit of a governmental unit—Colorado, and is not compensation for actual pecuniary loss. Accordingly, we will disallow the collection fee of $275.75, but will afford the penalty of $167.00 [6] nondischargeable.

An appropriate Order will be entered.

## ORDER

The Court having this date entered its Memorandum of Decision in the above referenced matter, now Orders:

(1) The complaint of the State of Colorado is granted in part and denied in part;

(2) Debtor's debt to Colorado of $984.00 is deemed non-dischargeable;

(3) Colorado's collection fee is discharged;

(4) Colorado's penalty assessed against Debtor in the amount of $167.00 is not discharged; and,

---

**6.** Debtor did not contest the amount of the penalty in this hearing, nor did he contest it when it was assessed. We assume, therefore, it is correctly calculated.

34

(5) Each party is to bear their own costs.