**In re Bruce ADAMIC f/k/a Eagle Bear Holdings, LLC, Debtor.**

**No. 99–25928 SBB.**

United States Bankruptcy Court,
D. Colorado.

March 26, 2003.

Deanna L. Westfall, Denver, CO, for Debtor.

Stephen G. Smith, Assistant Attorney General, State Services Section, Denver, CO, for Colorado Department of Labor.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION FOR ENTRY OF ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT ENTER

SIDNEY B. BROOKS, Chief Judge.

THIS MATTER is before the Court after a hearing on February 19, 2003, concerning the Debtor's Motion for Entry of Order to Show Cause Why Sanctions Should Not Enter Pursuant to 11 U.S.C. § 362(h).

The Debtor, Bruce Adamic, requests that the Court enter an order to show cause, directed to the Colorado Department of Labor and Employment, Division of Employment and Training ("Department"), requiring it to demonstrate why sanctions should not be imposed for its alleged violation of the automatic stay in collecting pre-petition unemployment com-

pensation overpayments. The Department filed a written response to the Debtor's motion, but did not appear at the hearing.[1] The Court took the matter under advisement and the following constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 9014(c); Fed.R.Civ.P. 52(a).[2]

## I. Background

For a period of weeks in the fall of 1993, the Debtor collected state unemployment benefits under the Colorado Employment Security Act. See Colo.Rev.Stat. §§ 8–70–101 to 8–82–105; 7 Colo.Code Regs. 1101–2. The following year, the Department audited the Debtor's claims and determined that he had worked at a company called Sygma Network in Westminster, Colorado while receiving unemployment compensation. The Debtor never disclosed to the Department that he had obtained another job while he was receiving payments for unemployment.

After its initial audit, the Department sent a letter to the Debtor requesting more information and the Debtor conceded in a written response that he had worked

temporarily while receiving unemployment payments. (Department's Response Ex. A through C)

In November, 1994, the Department issued a formal "Determination of Overpayment of Benefits," in which it calculated that the Debtor had received $2,370.00 in overpayments. (Department's Response Ex. E) The Department concluded that the Debtor had received those payments "by reason of false representation or willful failure to disclose a material fact," and it assessed a fifty percent monetary penalty in the amount of $1,185.00 in accordance with Colo.Rev.Stat. § 8–81–101(4)(a)(II).[3] The Department also imposed a non-monetary penalty of forty weeks under the statute.[4] The penalties were effective under the Department's formal determination on November 14, 1994.

The Debtor did not appeal the Department's determination as to the amount of the overpayment or the penalties assessed. Colo.Rev.Stat. § 8–74–106 (governing time limits and procedures for appeal). The monetary obligation remained unsatisfied

1. The file reflects that the Department did not receive notice of the hearing. The factual issues in this case are not in dispute, however, and the resolution of the matter is predominantly, if not exclusively, a question of law. Accordingly, the Court need not take further evidence. 11 U.S.C. § 105(a); Fed. R. Bankr.P. 9017; Fed.R.Civ.P. 43(e).

2. Jurisdiction is predicated on 28 U.S.C. §§ 157(a); 1334(a) and D.C. COLO. L. Civ. R. 84.1(A). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O). The Court recognizes that claims for damages under 11 U.S.C. § 362(h) are generally brought as adversary proceedings in this district. Fed. R. Bankr.P. 7001(1), (7) and (9).

3. Colo.Rev.Stat. § 8–81–101(4)(a)(II) states that, "[i]f any person receives any such overpayment because of his or her false representation or willful failure to disclose a material

fact ... the person shall be required to pay the total amount of the overpayment, which shall be paid into the unemployment trust fund, plus a penalty of fifty percent of such overpayment ...."

4. With respect to temporal penalties, Colo. Rev.Stat. § 8–81–101(4)(a)(II) provides that, "[i]f any person receives any such overpayment because of his or her false representation or willful failure to disclose a material fact ... such person may be denied benefits, when otherwise eligible, for four-week period for each one-week period in which such person filed claim for or received benefits to which he or she was not entitled." The file reflects that the Department determined that the Debtor had received benefit overpayments for a ten week period from October 2, 1993 to December 4, 1993, and it assessed the forty-week penalty accordingly. (Department's Response Ex. E)

when the Debtor filed for Chapter 13 relief five years later.

The Debtor filed a voluntary Chapter 13 petition on December 27, 1999.[5] In Schedule F, he listed the debt to the Department in the amount of $3,555.00 as an unsecured, non-priority claim. In Schedule I, the Debtor disclosed that was employed in Fort Collins, Colorado as a regional manager at "DalTile," with $4,900.00 of gross monthly income. *See generally* 11 U.S.C. §§ 101(30); 109(e).[6]

The Department filed a proof of claim on January 31, 2000, asserting a $3,094.32 unsecured claim for "overpayment of unemployment insurance benefits due to fraud/misrepresentation." The Debtor's Third Amended Chapter 13 Plan, which proposed no special treatment for the Department's general unsecured claim, was confirmed without objections on October 24, 2000, and it requires plan payments of $632.00 each month for a period of fifty-four months.[7]

The Debtor lost his job in August, 2002, and again applied to the Department for unemployment benefits. The Department issued a "Monetary Determination of Unemployment Insurance Benefits" on August 29, 2002, indicating that the Debtor was eligible to receive weekly unemployment benefits of $398.00 for twenty-six weeks (or total benefits of $10,348.00). (Debtor's Motion Ex. A) The Department also sent a form "Overpayment Reminder" indicating that the remaining balance of the 1993 overpayments owed by the Debtor was $2,972.50.[8] (Docket Entry No. 92,

filed Nov. 4, 2002, Ex. 1) The "reminder" also indicated that, although the debt for the overpayments was "pending bankruptcy," all of the Debtor's weekly unemployment benefits "will be used to pay off the [1993] overpayment" because he had "caused the overpayment by willfully giving false information or consciously holding back information." (*Id.*)

According to a handwritten notation on the "reminder," the forty-week penalty assessed under Colo.Rev.Stat. § 8–81–101(4)(a)(II) is "not dischargeable by [sic] bankruptcy." (Docket Entry No. 92, filed Nov. 4, 2002, Ex. 1) A subsequent letter from the Department to the Debtor in October, 2002, confirmed that, in its opinion, the Debtor is required to "serve" the penalty weeks. (Debtor's Motion Ex. B)

In November, 2002, the Debtor filed a *pro se* letter with the Court, complaining that the Department was "not following the rules," by penalizing him and withholding his current unemployment benefits to recover the 1993 overpayments. The Debtor retained counsel (after a letter from the Court's staff advised that it could not accept his *ex parte* communication), and on January 24, 2003, the Debtor filed the present Motion for Entry of Order to Show Cause Why Sanctions Should Not Enter Pursuant to 11 U.S.C. § 362(h).

In his motion, the Debtor claims that the Department is bound by the terms of the confirmed Chapter 13 plan, and that its efforts to collect the 1993 overpayments by withholding his current unemployment

---

5. The Debtor's prior Chapter 13 case, Case No. 99–18141 PAC, was filed in June, 1999 and dismissed in November, 1999; no plan was confirmed.

6. The Debtor filed an Amended Schedule I on May 1, 2000, disclosing gross monthly income of $5,416.66.

7. Should the Debtor complete the required payments, he will be eligible for a discharge in July, 2004. 11 U.S.C. § 1328(a).

8. The Debtor presumes that the reduction in the amount of the outstanding overpayment is a result of payments made by the Chapter 13 Trustee.

benefits and exacting the forty penalty weeks is a "clear violation" of the automatic stay. *See* 11 U.S.C. § 362(a)(6) (precluding "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case").

The Department filed a responsive pleading on January 24, 2003, arguing that the automatic stay does not preclude it from recouping the 1993 overpayments or from denying the Debtor's claim for current unemployment benefits. Following the hearing in this matter, the Debtor filed a reply brief, refuting the Department's arguments concerning recoupment and its denial of benefits and requesting an order: (1) requiring the Department to pay the Debtor all post-petition unemployment compensation due and owing from August, 2002 to the present; and (2) imposing sanctions on the Department for violating the automatic stay, including reasonable attorney fees.

As the parties recognize, courts addressing whether a governmental unit may satisfy a debtor's pre-petition obligation for receiving overpayments of unemployment benefits by offsetting or applying post-petition benefits to the outstanding debt have reached different conclusions. *Compare In re Malinowski*, 156 F.3d 131, 135 (2d Cir.1998) (concluding that New York state labor department could not recoup pre-petition overpayments from Chapter 13 debtor post-petition) *with In re Ross*, 104 B.R. 171, 174 (E.D.Mo.1989) (concluding that state of Missouri could recover overpayments from Chapter 13 debtor's post-petition claim for unemployment benefits without violating automatic stay); *In re Gaither*, 200 B.R. 847, 853 (Bankr. S.D.Ohio 1996) (same under Ohio law).

Insofar as this case arises "[u]nder the unique statutory scheme of the Colorado Employment Security Act"; *Velo v. Employment Solutions Personnel*, 988 P.2d 1139, 1141 (Colo.App.1998); opinions from other jurisdictions offer little substantive guidance. Although debts for overpayment of unemployment compensation benefits in Colorado may be excepted from a Chapter 7 discharge under 11 U.S.C. § 523(a)(2)(A), and monetary penalties may be excepted under 11 U.S.C. § 523(a)(7); *see State ex rel. Central Collection Service v. O'Brien (In re O'Brien)*, 110 B.R. 27, 31 (Bankr.D.Colo.1990); this case presents an issue of first impression concerning whether the Department violated the automatic stay by: (1) applying the Debtor's post-petition weekly benefits to the outstanding debt due for the overpayments; and (2) enforcing a penalty for the Debtor's pre-petition receipt of unemployment benefit overpayments, precluding him from receiving post-petition unemployment compensation.

## II. Discussion

■ Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of acts "to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). The stay also precludes "the enforcement, against the debtor or against property of the estate, of a judgment obtained before commencement of the case." 11 U.S.C. § 362(a)(2). Actions taken in violation of the automatic stay are void and have no effect; *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir.1994); and "an individual injured by any willful violation" of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

### A. Recoupment/Setoff

The Debtor argues that the Department may not recoup the 1993 overpayments

from his current unemployment compensation benefits without violating the automatic stay, because it is attempting to collect on its pre-petition claim and/or enforce its own judgment as to the 1993 overpayments.

The Debtor relies on the general proposition that the Department is bound by the terms of his confirmed Chapter 13 plan as to the amount and character of its pre-petition claim for 1993 overpayments. 11 U.S.C. § 1327; *see Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1258 (10th Cir.1999) (recognizing that a final "order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan" and that terms of plan are res judicata). The Debtor maintains that the Department's actions in this case constitute a setoff, rather than recoupment, of its pre-petition claim, and that the cases from other jurisdictions permitting recoupment in this context are "ill-reasoned."

 "The common law doctrine of setoff, as recognized in section 553 of the Bankruptcy Code, grants a creditor the right 'to offset a mutual debt owing by such creditor to the debtor' so long as both debts arose before commencement of the bankruptcy action and are indeed mutual." *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir.1990) (per curiam) (quoting 11 U.S.C. § 553(a)); *see Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (recognizing that § 553(a) of the Bankruptcy Code creates no federal right, but preserves "whatever right of setoff otherwise exists").

 "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'"

*Strumpf*, 516 U.S. at 18, 116 S.Ct. 286 (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913)). Although the debts generally arise in separate transactions where setoff applies, the "mutuality requirement mandates that the debts involved be between the same parties standing in the same capacity." *Davidovich*, 901 F.2d at 1537. A creditor's setoff rights are automatically stayed upon the filing of a bankruptcy petition; 11 U.S.C. § 362(a)(7); *Strumpf*, 516 U.S. at 17, 116 S.Ct. 286; and "[s]etoff is allowed in only very narrow circumstances in bankruptcy." *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 157 (10th Cir.1986). "But a creditor properly invoking the recoupment doctrine can receive preferred treatment even though setoff would not be permitted." *Id.*

 Recoupment "is a distinct doctrine in bankruptcy cases"; *Davidovich*, 901 F.2d at 1537; permitting a creditor to defend against a debtor's claim or cause of action by resort to matters arising from the same transaction. *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 959 (10th Cir.1996). "[R]ecoupment is an equitable doctrine that allows the determination of a 'just and proper liability' regarding such a claim." *Id.*; *see Davidovich*, 901 F.2d at 1537 (noting that equitable doctrine of recoupment in bankruptcy context "permit[s] a creditor to offset a claim that arises from the same transaction as the debtor's claim without reliance on the setoff provisions and limitations of section 553"); *B & L Oil*, 782 F.2d at 157 (recognizing that, under recoupment, a creditor may meet a debtor's claim "with a countervailing claim that arose out of the same transaction").

 "Equitable recoupment permits one party to a transaction to withhold funds

due the other party, *as long as both debts arise from the same transaction.*" *In re Healthback, LLC*, 226 B.R. 464, 475 (Bankr.W.D.Okla.1998). "The 'same transaction' requirement acts as a mechanism to ensure that equitable reasons for recoupment are present before a creditor may attain priority through the doctrine of recoupment." *Peterson Distributing*, 82 F.3d at 960.

A creditor's proper exercise of recoupment in bankruptcy is not a violation of the automatic stay. *Malinowski*, 156 F.3d at 133 ("The automatic stay is inapplicable because the funds subject to recoupment are not the debtor's property."); *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (9th Cir. BAP 2001) ("Since recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge."); *Continental Cas. Co. v. Gullett (In re Gullett)*, 253 B.R. 796, 806 (S.D.Tex. 1999), *aff'd mem.*, 220 F.3d 585 (5th Cir. 2000) ("Any actions related to [a] recoupment cannot, as a matter of law, violate the automatic stay."); *Powell v. FELRA and UFCW Health and Welfare Fund (In re Powell)*, 284 B.R. 573, 576 (Bankr.D.Md. 2002) (recognizing that a creditor "is not required to seek judicial approval prior to recoupment because the 'right of recoupment does not constitute a debt which is dischargeable' ").

Despite its equitable underpinnings, "[r]ecoupment is 'narrowly construed' in bankruptcy cases because it violates the basic principle of equal distribution to creditors." *Peterson Distributing*, 82 F.3d at 959; *see B & L Oil*, 782 F.2d at 158 (noting that recoupment exception to general bankruptcy principles "should be narrowly construed"). Similarly, the phrase " 'same transaction' is a term of art that must be narrowly

defined." *Peterson Distributing*, 82 F.3d at 960.

"[C]ourts generally have only found this 'same transaction' requirement to be satisfied when the debts to be offset arise out of a single, integrated contract or similar transaction." *Davidovich*, 901 F.2d at 1538; *see B & L Oil*, 782 F.2d at 157 (recognizing that recoupment often applies where a contract expressly permits withholding of overpayments from future payments). "[F]or claims to arise from the 'same transaction' for the purposes of recoupment 'both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting [his or her] obligations.' " *Peterson Distributing*, 82 F.3d at 960 (quoting *University Medical Ctr. v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065, 1081 (3d Cir.1992)); *accord Malinowski*, 156 F.3d at 133 (applying "restricted" definition of "transaction" for purposes of recoupment); *contra Madigan*, 270 B.R. at 755 (applying "logical relationship" test and giving "the word 'transaction' . . . a liberal and flexible construction"); *Stratman v. Missouri Div. of Employment Security (In re Stratman)*, 217 B.R. 250, 253 (Bankr.S.D.Ill.1998) (same).

Ultimately, in considering whether a creditor's claim arises from the "same transaction," the Court must examine the equities of the case. *Peterson Distributing*, 82 F.3d at 960. "In light of recoupment's equitable foundation, the doctrine is only applicable to claims that are so closely intertwined that allowing the debtor to escape [his or her] obligation would be inequitable notwithstanding the Bankruptcy Code's tenet that all unsecured creditors share equally in the debtor's estate." *Id.*

The Debtor urges this Court to follow the reasoning of the United States Court of Appeals for the Second Circuit in *Malinowski*, and to conclude that his claims for unemployment compensation benefits—one in 1993 and the other in 2002—were not part of the "same transaction" for purposes of recoupment. In *Malinowski*, the Second Circuit applied, as this Court must, a narrow test for the "same transaction" in the context of recoupment of unemployment benefits under New York law, and it considered and rejected "two theories under which governmental entities have sought to consolidate claims arising out of independent sets of facts giving rise to statutory rights." *Malinowski*, 156 F.3d at 134; *cf. Madigan*, 270 B.R. at 755 (noting split among circuits as to breadth of "same transaction" for recoupment in bankruptcy).

The first theory concerns a governmental unit's "attempt to consolidate the claims by defining present substantive rights by reference to past events." *Id.* The Second Circuit concluded that, although Congress may decide which *federal* benefits override rights and obligations under the Bankruptcy Code, "a state may not choose to define its rights in a way that defeats the ends of federal bankruptcy law." *Id.* (distinguishing *United States v. Consumer Health Services, Inc.*, 108 F.3d 390, 394 (D.C.Cir.1997)).

The court in *Malinowski* expressed its view that a state statutory scheme mandating recovery of overpayments in contravention of the Bankruptcy Code's general framework for distribution of assets to creditors may not automatically transform two separate claims for unemployment compensation into the "same transaction" for purposes of recoupment. *Malinowski*, 156 F.3d at 134 n. 2. In this connection, the court intimated that, while Congress may be empowered to "override federal bank-

ruptcy laws" by requiring repayment of federal benefits, a state has no such power. *Id.*

The Second Circuit also rejected the "contract analogy" that considers the relationship between a state government and a debtor as an ongoing contractual relationship to facilitate a finding that the past overpayments and future benefits stem from the "same transaction." *Id.* at 134–35; *see Ross*, 104 B.R. at 173 (noting that pre-petition debt for overpayment of unemployment benefits "is part of the same quasi-contractual claim" that the state asserted against post-petition claim for new benefits); *Gaither*, 200 B.R. at 852 (agreeing that, when a debtor files pre-petition claim for unemployment compensation, relationship resembling "societal contract" is established for purposes of "same transaction" analysis). In rejecting both theories concerning the "same transaction" in the context of recoupment of unemployment overpayments, the Second Circuit determined that the New York "statute provides for discrete and independent claims for different periods of unemployment, with different periods of employment creating eligibility for specific periods of unemployment benefits." *Malinowski*, 156 F.3d at 135.

Conspicuously absent from the Second Circuit's opinion in *Malinowski*, however, is any recognition that state unemployment compensation statutes implement a *federal* program. *See New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519, 536, 536 n. 27, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) (noting that New York's unemployment compensation program "is structured to comply with a federal statute" and acknowledging that all states have implemented programs to mitigate federal taxes for employers by enacting unemployment compensation statutes in compliance with federal law);

*Shaw v. Valdez,* 819 F.2d 965, 967 (10th Cir.1987) ("The federal unemployment compensation program is implemented and administered by the states."); *Losey v. Roberts,* 677 F.Supp. 101, 106 (N.D.N.Y. 1986) ("The unemployment compensation program is a joint federal-state effort."); *accord Paul v. Industrial Comm'n,* 632 P.2d 638, 639 (Colo.App.1981) (recognizing that "Colorado's unemployment compensation statutes are intended to further the same goals" as the federal statutes). **Under both the Social Security Act, 42 U.S.C. § 503(g)(1), and the Federal Unemployment Tax Act, 26 U.S.C. 3304(a)(4)(D),[9] Congress expressly authorizes states to enact provisions that permit recoupment of overpayments by withholding benefits.[10]** And the Social Security Act contemplates state schemes that "may terminate, deny, suspend or reduce any benefits" for unemployment compensation in certain circumstances. 42 U.S.C. §§ 503(f); 1320b–7(b) and (c); *see also Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 483, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) (construing Social Security Act and Federal Unemployment Tax Act).

In this Court's view, the two claims for unemployment compensation in this case are part of the "same transaction" for purposes of recoupment. A state statutory scheme conditioning receipt of current benefits on recovery of prior overpayments is expressly authorized by Congress, as is denial of claims for benefits where state eligibility requirements have not been met.

Under the Colorado Employment Security Act, eligibility for unemployment benefits and entitlement to those benefits "are distinct and separate matters that relate to whether a claimant may receive unemployment compensation." *Velo,* 988 P.2d at 1141; *City and County of Denver v. Industrial Claim Appeals Office,* 833 P.2d 881, 883 (Colo.App.1992). "Eligibility" for unemployment compensation relates to the monetary provisions of the statute, while "entitlement" concerns the non-monetary provisions. *Velo,* 988 P.2d at 1141; *Denver v. Industrial Claim,* 833 P.2d at 882; *see O'Brien,* 110 B.R. at 32 (discussing eligibility requirements). Each is an equal element of a claim for unemployment compensation benefits. *Arteaga v. Industrial Claim Appeals Office,* 781 P.2d 98, 100 (Colo.App.), *cert. denied,* 781 P.2d 98 (Colo.App.1989).

Although monetary eligibility for benefits is determined weekly, and it "encompasses many different aspects" of a claimant's request for benefits, the non-monetary provisions of the Colorado Employment Security Act have equal weight and may preclude a claimant from receiving unemployment compensation. *Id.; see* Colo.Rev.Stat. § 8–73–107 (listing eligibility requirements); Colo.Rev.Stat. § 8–73–108 (non-monetary provisions). Under Colo.Rev.Stat. § 8–73–108(1), an otherwise eligible claimant may be "disqualified" from receiving benefits. Section 8–73–108(3)(d) expressly permits denial of benefits, or disqualification, "by

---

**9.** As amended by the Job Creation and Worker Assistance Act, Pub.L. 107–147 § 206(a)(1) and (c)(1), 116 Stat. 21 (Mar. 9, 2002).

**10.** Specifically, the Social Security Act provides that "[a] State may deduct from unemployment benefits otherwise payable to an individual an amount equal to any overpayment made to such individual under an unemployment benefit program of the United

States or of any other State, and not previously recovered." 42 U.S.C. § 503(g)(1). Likewise, the Federal Unemployment Tax Act states that "amounts may be deducted from unemployment benefits and used to repay overpayments as provided in section 303(g) of the Social Security Act," which is codified at 42 U.S.C. § 503(g). 26 U.S.C. § 3304(a)(4)(D).

reason of ... fraud in connection with a claim for benefits." Indeed, the "Monetary Determination of Unemployment Insurance Benefits" sent to the Debtor by the Department in August, 2002, states unequivocally that "[b]eing monetarily eligible does not automatically mean that you will receive benefits." (Debtor's Motion Ex. A)

The Debtor, while eligible under Colorado law, is not entitled to receive benefits due to his prior conduct in collecting the 1993 overpayments. Once the Department determined in 1994 that it had overpaid benefits and that the Debtor had obtained those overpayments by false representation and/or willful failure to disclose material facts, the state statute allowed it to, "in addition to instituting collection procedures, withhold subsequent benefit payments to which the claimant is or becomes entitled and apply the amount withheld as an offset against the overpayment." Colo. Rev.Stat. § 8–79–102(1); *accord* 26 U.S.C. § 3304(a)(4)(D); 42 U.S.C. § 503(g)(1). The Department's 1994 determination that the Debtor had received overpayments circumscribed, or limited, any future claims for benefits, permitting outright denial of benefits and a recoupment of the amount of the overpayments. In that sense, the Debtor's post-petition entitlement to unemployment benefits was intertwined by statute with his pre-petition receipt of overpayments. *Peterson Distributing*, 82 F.3d at 960.

The acts that disentitle the Debtor to receive payment on his current claims for benefits, and that allow the Department to apply any current benefits to the overpayments, occurred in connection with the Debtor's 1993 receipt of the overpayments due to false representation or willful failure to disclose a material fact. Simply because the Department has a pre-petition claim against the Debtor for the 1993 over-payments does not preclude it from obtaining satisfaction of that claim out of property to which the Debtor is not entitled under state law. *See O'Brien*, 110 B.R. at 30–31 (recognizing that debtor collecting unemployment compensation does not receive his own contributed funds; "[e]mployees do not make a contribution to Colorado's unemployment fund, employers do").

Under Tenth Circuit precedent, the crux of recoupment in bankruptcy turns on the equities of the case. *Peterson Distributing*, 82 F.3d at 960. In this case, the Department determined that the Debtor had willfully failed to disclose a material fact as to his employment status while collecting benefits in 1993. The Debtor conceded in a written response that he had obtained a "temporary job," but he nevertheless continued to collect unemployment benefits. The facts of this case in relation to the equities differ markedly from those facing the Second Circuit in *Malinowski*, 156 F.3d at 135 (noting that the debtor had "not been accused of willful wrongdoing" and that the "lack of fraud" tipped the equities in the debtor's favor against recoupment). The equities of the case favor the Department and the Court concludes that it is entitled to recoup the 1993 over-payments from the Debtor's current claim for benefits without violating the automatic stay. The two episodes of unemployment in this case, although temporally distinct, are "so closely intertwined" that allowing the Debtor to shirk his repayment obligations would be inequitable. *Peterson Distributing*, 82 F.3d at 960.

In fact, the Department could not have violated the automatic stay because the post-petition benefits are neither property of the Debtor nor property of the estate. *Montoya v. Vigil (In re Vigil)*, 250 B.R. 394, 396 n. 2 (Bankr.D.N.M.2000) (recognizing that, "[a]s a general matter,

the automatic stay does not apply to property which is not property of the estate"); *In re Wilkerson Enter., Inc.*, 95 B.R. 213, 215 (Bankr.N.D.Okla.1989) (same). Under the Colorado Employment Security Act, the Debtor was not entitled to post-petition benefits and those benefit payments are not property of the estate. *See Cassidy v. Adams*, 872 F.2d 729, 733 (6th Cir. 1989) (concluding that employee "had no protectible [sic] property right" in recouped unemployment overpayments).

■ The Debtor's present entitlement to payment of the post-petition benefits is limited under state law. Colo.Rev.Stat. §§ 8–70–106; 8–73–108(3)(d). State law is determinative as to the extent of the Debtor's interest in property—including his interest in current unemployment benefits. *Bailey v. Big Sky Motors, Inc. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) ("For purposes of most bankruptcy proceedings, '[p]roperty interests are created and defined by state law.' "); *see Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir.1998). Federal law controls whether the interest, as determined by state law, is property of the estate. *Id.; see* 11 U.S.C. §§ 541; 1306.

Section 1306(a) of the Bankruptcy Code defines property of the estate as all pre-petition property specified in 11 U.S.C. § 541 plus all property "that the debtor acquires after commencement of the case but before the case is closes, dismissed, or converted" and "earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted ...." 11 U.S.C. § 1306(a)(1) and (2).[11] Section 1327(b) provides that, upon confirmation of a Chapter 13 plan, all property of the estate vests in the debtor.

Because the Debtor is not entitled to receive unemployment compensation under state law due to his prior fraud and/or failure to disclose a material fact, he never "acquired" the post-petition payments and those payments do not constitute "earnings for services performed." Accordingly, weekly unemployment payments to which the Debtor is not entitled under the Colorado Employment Security Act cannot be property of the estate; and the Department's exercise of its right to withhold the post-petition benefits is not an "act to collect, assess, or recover a [pre-petition] claim *against the debtor*." 11 U.S.C. § 362(a)(6) (emphasis added).

The Court recognizes that cases considering recoupment in bankruptcy in the context of other federal benefit programs have reached different conclusions. For example, in considering recoupment of overpayments of Social Security benefits, the Third Circuit noted that, "in spite of statutory or contractual provisions providing for 'recoupment' of previous overpayments, the primary purpose of [the Social Security Act] is to provide income security to the recipients." *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir.1984). Accordingly, those social welfare payments "should be protected by the automatic stay" and "subject to the ordinary rules of bankruptcy." *Id.; Neavear v. Schweiker*, 674 F.2d 1201, 1206 (7th Cir.1982) (determining that debts for Social Security overpayments are dischargeable in bankruptcy); *United States v. Brown (In re Brown)*, 40 B.R. 923, 925 (Bankr.D.Kan.1984) (concluding that Social Security Administration could not recoup overpayments after bankruptcy discharge); *see also University Medical Center v. Sullivan (In re University Medical Center)*,

---

**11.** Section 541 of the Code defines "property of the estate" broadly, encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

973 F.2d 1065, 1081 (3d Cir.1992) (precluding recoupment of Medicare overpayments); *but see United States v. Consumer Health Servs.*, 108 F.3d 390, 395 (D.C.Cir.1997) (permitting recoupment of Medicare overpayments).[12]

As the United States District Court for the Eastern District of Missouri noted in *Ross*, however, "[u]nemployment compensation benefits, unlike social security benefits, are not a product of an employee's labor or the result of his [or her] individual contributions ... As such, a debtor does not have a property right in the unemployment compensation the same way [he or] she would in [his or] her social security benefits ...." *Ross*, 104 B.R. at 173; *accord O'Brien*, 110 B.R. at 31; *cf. Lee*, 739 F.2d at 876 (noting that Social Security benefits are statutory entitlements). In enacting the federal unemployment compensation statutes, "Congress did not intend to require that the States give coverage to every person involuntarily unemployed." *Hodory*, 431 U.S. at 483, 97 S.Ct. 1898. If, pursuant to federal law, the state determines that a claimant is not entitled to unemployment benefits, this Court is powerless to order otherwise. *Id.* at 490, 97 S.Ct. 1898 (recognizing that "the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy").

As a practical matter in this case, the Department has determined that the Debtor is not entitled to receive post-petition unemployment compensation benefits. Even if this Court were to conclude that "recoupment" of the 1993 overpayments violates the automatic stay, it could not order the state to deem the Debtor enti-

tled to post-petition payments. That is, under the Colorado Employment Security Act, the Debtor's pre-petition conduct precludes him from receiving post-petition benefits. The Department may choose to "apply" some of the post-petition benefits, to which the Debtor otherwise would have been entitled, to the outstanding obligation for the 1993 overpayments, notwithstanding its acceptance of unsecured treatment of that claim under the Debtor's confirmed Chapter 13 plan.

As long as the penalties precluding the Debtor from receiving unemployment benefits were imposed and enforced without violating the automatic stay, the Department's refusal to pay post-petition benefits and its "use" of some of those otherwise allowable benefits to recoup the 1993 overpayments was proper.

### B. Penalty Enforcement

▮ The Debtor contends that the Department's exaction of the forty-week penalty violates the automatic stay and that, contrary to the Department's claim, it is not a valid exercise of the police and regulatory power of the state. *See* 11 U.S.C. § 362(b)(4) (excepting from automatic stay acts of a governmental unit to enforce police and regulatory powers). According to the Debtor, the imposition of the forty-week penalty is a pecuniary penalty, aimed at recovering the pre-petition overpayments.

It is beyond cavil that the unemployment compensation statutes in Colorado are enacted pursuant to the general assembly's police power. *Cottrell Clothing Co. v. Teets*, 139 Colo. 558, 342 P.2d 1016, 1019 (1959); *Industrial Comm'n v. Northwestern Mut. Life Ins. Co.*, 103 Colo. 550, 88 P.2d 560, 563 (1939) (construing prior

---

12. Even the Third Circuit has recognized generally, however, that the government may recover Social Security overpayments if it dem-

onstrates that the claimant is not otherwise entitled to receive benefits. *Cannuni v. Schweiker*, 740 F.2d 260, 263 (3d Cir.1984).

Unemployment Compensation Act). The state legislature expressly states in the Colorado Employment Security Act that

in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

Colo.Rev.Stat. § 8–70–102.

■ In determining whether a governmental unit's actions fall within the parameters of § 362(b)(4), however, the Court must consider the "pecuniary purpose" test and the "public policy" test. *Yellow Cab Cooperative Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Cooperative Ass'n)*, 132 F.3d 591, 597 (10th Cir.1997) (quoting *Eddleman v. United States Dep't of Labor*, 923 F.2d 782, 791 (10th Cir.1991)). As explained by the Tenth Circuit:

Under the "pecuniary purpose" test, the court asks whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy. If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay.

*Id.*

The Tenth Circuit has contrasted the "public policy" test by stating that it "distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights.... [A]ctions taken for the purpose of advancing private rights are not excepted from the stay." *Id.*

In this case, the Colorado Employment Security Act authorizes the imposition of a "four-for-one" penalty for each week that a person received benefits to which he or she was not entitled. Colo.Rev.Stat. § 8–81–104(a)(II). The statute requires recovery of the overpayments and imposition of a fifty percent monetary penalty. *Id.*

The repayment and monetary penalty provisions are mandatory. *See* Colo.Rev. Stat. § 8–81–101(4)(a)(I) ("Any person who has received any sum as a benefit ... to which he was not entitled shall be required to repay such amount"); § 8–81–101(4)(a)(II) ("If any person receives any such overpayment because of his or her false representation or willful failure to disclose a material fact ... the person shall be required to pay the total amount of the over payment ... plus a fifty percent penalty"); *see Woollems v. Industrial Claim Appeals Office*, 43 P.3d 725, 726 (Colo.App.2001) (concluding that monetary penalty is mandatory). But the provisions concerning recovery of past overpayments by withholding current benefits are permissive. *See* Colo.Rev.Stat. § 8–79–102(1) (providing that, in the case of overpayment of benefits, the state "may" withhold subsequent benefits as an offset in addition to other collection actions); § 8–81–801(4)(a)(II) (stating that any person who receives overpayments by reason of false representation or willful failure to disclose a material fact "may" be denied benefits when otherwise eligible); *In re Lishnevsky*, 981 P.2d 609, 611 (Colo.App.1999) (recognizing that the use of the term "may" in Colorado statutes generally indicates that action is discretionary).

According to the Department's "Determination of Overpayment of Benefits," it imposed the penalties on the Debtor, both monetary and temporal, several years prepetition—on November 14, 1994. (Department's Response Ex. E) Thus, both penalties were imposed pre-petition and the question devolves to whether *enforcement*

of the forty-week penalty is "primarily" to protect the Department's pecuniary interest in recovering the 1993 overpayments and monetary assessment, or whether it is "aimed at effectuating public policy." *Yellow Cab*, 132 F.3d at 597.

In the Department's view, "[t]he public policy behind the 40–week penalty is to protect the integrity of the unemployment insurance system by deterring the filing of false or misleading claims for unemployment benefits." The Court agrees and concludes that enforcement of the forty-week penalty is not primarily for recovery of the 1993 overpayments.

If the primary purpose of the temporal penalty is to collect prior unemployment overpayments and the fifty percent monetary penalty, the statutory provisions for withholding current benefits and imposing the penalties would be mandatory, rather than permissive or discretionary. *See* Colo.Rev.Stat. §§ 8–79–102(1); 8–81–801(4)(a)(II). In addition, the amount of the overpayments has little monetary correlation, if any, to the duration of the penalty.

In this case for example, the Department determined that the Debtor was monetarily eligible to receive $398.00 per week in post-petition benefits, or total benefits of $10,348.00. The outstanding 1993 overpayments and fifty percent penalty, however, total $2,972.50. If collection of the prior overpayments is the "primary" purpose of the penalty provisions, the entire debt would be satisfied after approximately eight weeks of the Debtor's post-petition benefits.

In other words, the exaction of the forty-week penalty, at $398.00 per week for twenty-six weeks of current eligibility, results in a pecuniary recovery of $10,348.00—more than three times the amount of the outstanding 1993 overpayments and fifty percent monetary penalty. Given the permissive nature of the penalties and that the temporal penalty assessed does not correlate to the amount of the overpayments, the Court cannot conclude in this case that the "primary" purpose of withholding the Debtor's current benefits is pecuniary. Accordingly, enforcement of the temporal penalty is not barred by the automatic stay under 11 U.S.C. § 362(b)(4).

### III. Conclusion

For all of the foregoing reasons, the Court concludes that the Department did not violate the automatic stay by recouping the 1993 overpayments and withholding the Debtor's current unemployment compensation benefits as a penalty. Therefore, it is

ORDERED that the Debtor's Motion for Entry of Order to Show Cause Why Sanctions Should Not Enter Pursuant to 11 U.S.C. § 362(h) and the Debtor's request for an order imposing sanctions on the Colorado Department of Labor and Employment, Division of Employment and Training, are DENIED.